R. O. DAVIS, Petitioner,

v.

Norman N. CAMPBELL, Respondent.

No. B–7560.

Supreme Court of Texas.

Oct. 4, 1978.

Rehearing Denied Nov. 1, 1978.

James P. Finstrom, Dallas, for petitioner.

Gordon Shanklin, William F. Billings, Dallas, for respondent.

CHADICK, Justice.

This suit was instituted in the trial court by Roland O. Davis, plaintiff, against Norman N. Campbell and Harold Collum, defendants, as a breach of contract action. Summary judgment for the defendants was granted, but on appeal the judgment was reversed and the case remanded for trial on the merits. Tex.Civ.App., 524 S.W.2d 790. At trial on the merits, Davis was awarded a $20,624.38 judgment against Campbell on a

jury verdict. The action against Collum was withdrawn from the jury and a take-nothing judgment rendered. Campbell appealed and the Court of Civil Appeals reformed the trial court judgment by allowing Campbell a setoff of $13,500.00 against the trial court award and affirmed the trial court judgment as reformed. Tex.Civ.App., 563 S.W.2d 675. We reverse the reformation ordered by the Court of Civil Appeals and affirm the trial court judgment.

In 1953 Davis acquired a motel located on 1.46 acres of land in the City of Dallas. In 1969 he defaulted payment of indebtedness secured by first and second liens on the property. The first lien was foreclosed in April, 1969. C. D. Wyche financed Davis' reacquisition of the property and took a second lien as security. The Wyche second lien was foreclosed in 1970, and the Wyche Estate bought the property. The Trustee for the Wyche Estate gave Davis an oral option to repurchase the property on or before September 1, 1971 for $55,000.00. The Wyche Estate was engaged in liquidating its assets and had no interest in the property's speculative possibilities. Davis negotiated a contract with a group of doctors that granted them an option to purchase the property for $242,000.00. The option contract was dropped when the doctors learned that Davis did not have actual title to the property.

Davis immediately set about to borrow money to purchase the property from the Wyche Estate, planning to obtain title by exercise of the Wyche option and then sell to the doctor group. He approached Campbell, told him of the option and asked for a loan of $55,000.00. Davis proposed that he would take title in his own name and would repay the loan when the property was sold, together with ten percent interest and a bonus of $5,000.00 to Campbell. Campbell had the property appraised by Collum, a real estate broker, who found it to have sufficient value to be of speculative interest to Campbell. To stimulate Campbell's interest in the deal Davis proposed to increase the bonus to $6,500.00. Davis testified Campbell accepted the loan proposal. Campbell denied an agreement was reached.

According to Davis, on August 28, 1971 Campbell advised him title to the property would have to be taken in Collum's name and that Collum would be paid a $2,000.00 fee for his services out of the proceeds of the subsequent sale. Davis testified that he was not agreeable, but reluctantly went along with Campbell's requirement that title be taken in Collum's name because his option would expire within a few days. At this time Davis also agreed to pay all expense of the transfer of title from the Wyche Estate to Collum. At the date the purchase from the Wyche Estate was closed, Davis and his wife delivered their quitclaim deed to the property to Collum, and Davis paid closing expenses totaling $643.60.

Immediately following the purchase of the property from the Wyche Estate, Campbell and Collum leased it to Davis at $1,600.00 per month, and Davis continued with operation of the motel but fell $13,500.00 behind in payment of monthly rent. On July 20, 1972 Campbell and Collum sold the property for $210,000.00 to the same group of doctors with whom Davis negotiated in May of 1971. In order to make the transfer Campbell cleared title to the property by paying all indebtedness thereon secured by existing liens, including two judgments against Davis, taxes, both current and delinquent, and closing costs. Davis did not participate in this sale of the property and received no part of its proceeds, but he was notified that his lease was terminated because of the sale.

## THE DAVIS APPLICATION

Campbell's brief in the Court of Civil Appeals contained a point of error that the trial court judgment awarding Davis a $20,624.38 recovery was excessive and should be corrected by remittitur. The court treated the point as complaint that the trial court failed to offset against the judgment $13,500.00 in motel rent arrearage which Davis acknowledged owing Campbell. The court concluded that Davis' liability to Campbell

for the arrearage was proven as a matter of law and reformed and reduced the judgment by offsetting the amount thereof. Whether the offset was allowable under the record is the question raised by the Davis application. We hold the offset improper.

In the trial court Davis pleaded a conventional breach of contract action. Campbell answered by general denial and in the alternative pleaded and prayed that certain alleged indebtedness Davis owed him be offset against any recovery Davis might be awarded. One of the items of indebtedness alleged was the $13,500.00 rent arrearage that accrued under the motel lease. In the trial court Davis presented his action on the theory that the measure of damages was the net profit that he would have made under the consummated sale of the property had Campbell performed the alleged contract. All evidence produced was in harmony with this theory. The $13,500.00 rent arrearage was treated by the parties as indebtedness that Davis was obligated to pay and as an expense that Campbell was entitled to recoup before a balance was struck that would show Davis' profit on the transaction. Two special issues presenting the Davis theory were submitted to the jury. No objection to the issues or request for additional issues or instructions challenged the theory.

Nothing in the record suggests that the jury in answering the special issues submitted did not credit the rent arrearage to Campbell and consider it as a charge against Davis' probable profit had the alleged contract been performed. Campbell's motion for new trial contained an assignment of error that the trial court failed to award him judgment on his cross-action for the rent arrearage but the assignment was abandoned and not brought forward or briefed as a point of error in the Court of Civil Appeals. Also, consistent with Davis' theory of the measure of damages, the jury had before it, without objection, a blackboard chart which summarized the testimony tending to prove Davis' probable profit, as follows:

| | | |
|---|---|---|
| Sales Price | | $210,000.00 |
| Loan Payoff | $55,000.00 | |
| Loan Fees | 6,500.00 | |
| Loan Fees | 2,000.00 | |
| Closing Costs | 749.00 | |
| Closing Costs | 10.00 | |
| Closing Costs | 12.50 | |
| Closing Costs | 280.00 | |
| Closing Costs | 35.00 | |
| First Lien Payoff | 70,336.77 | |
| Taxes | 2,922.19 | |
| Taxes | 1,837.94 | |
| Judgment | 2,000.00 | |
| Judgment | 6,179.92 | |
| Judgment | 311.11 | |
| Delinquent Rents | 13,500.00 | |
| Payments made on loan | 23,559.52 | |
| Total Offsets | | 185,233.95 |
| Balance owed Davis | | $ 24,766.05 |

The closeness of the balance shown on the chart, $24,766.05, to the sum found by the jury as damages to Davis, $20,624.38, suggests that the jury considered the rental offset in its damages award.

Although the mental processes of the jury are unknown, the constraints of the theory upon which the case was tried by the parties required the jury to offset the rent arrearage in favor of Campbell in determining Davis' profit. Parties are restricted on appeal to the theory on which the case was tried. *State v. J. M. Huber Corporation,* 145 Tex. 517, 199 S.W.2d 501 (1947); *Sorrells v. Coffield,* 144 Tex. 31, 187 S.W.2d 980 (1945); *Safety Casualty Company v. Wright,* 138 Tex. 492, 160 S.W.2d 238 (1942); *Kousal v. Texas Power & Light Company,* 142 Tex. 451, 179 S.W.2d 283 (1944). The Court of Civil Appeals apparently overlooked the parties' trial theory and the jury's offset of the rent arrearage in reaching its verdict and granted Campbell a second setoff of the amount thereof. Such action was erroneous and harmful to Davis. Accordingly, the judgment of the Court of Civil Appeals awarding Campbell a recovery on the arrearage cross-claim and reforming the trial court judgment is reversed.

### THE CAMPBELL APPLICATION

Campbell attacks the trial court's submission of the contract issue to the jury. The

only special issues submitted to the jury were as follows:

ISSUE NO. 1

Do you find from a preponderance of the evidence that Norman N. Campbell orally agreed to loan R. O. Davis $55,000.00 to purchase the property in question from the Wyche Estate on the terms of ten percent interest and payments of fees of $6,500.00 and $2,000.00?

Answer "We do" or "We do not."

ANSWER We do.

If you have answered the last preceding issue "We do", then answer the next following issue; otherwise, do not answer the next following issue.

ISSUE NO. 2

Find from a preponderance of the evidence the amount of money, if any, R. O. Davis would have received from the proceeds of the sale of the property in question on July 20, 1972, if Norman N. Campbell had performed such agreement.

Answer in dollars and cents, if any.

ANSWER $20,624.38.

Campbell argues that the submission inquired only into a preliminary agreement and wholly failed to inquire of the final agreement which was effective between the parties at the time the transaction was closed.

■■■ Campbell argues that Special Issue No. 1 submitted by the trial court is immaterial, as it did not require the jury to determine an ultimate or controlling issue in the case. He concedes that no objection was directed to the special issue on that ground in the trial court, but insists that his objection to the issue on the ground that it was not raised by the evidence served the same purpose. Clearly, a "no evidence" objection is not a complaint that the special issue was immaterial. Campbell also objected in the trial court to Special Issue No. 1 on the grounds that it was multifarious in that it asked the jury to determine two issues: (1) the existence of an agreement and (2) the terms of the agreement. Again, the objection that the issue is multifarious

clearly is not a complaint that the issue submitted was not the controlling issue.

■■■ To preserve error Campbell was required to point out distinctly the matter to which he objected and the ground of his objection. Tex.R.Civ.P. 274. Where a litigant fails to distinctly object upon a certain ground, complaint on that ground is waived on appeal. *Wilson v. King*, 311 S.W.2d 957 (Tex.Civ.App.—Austin 1958, writ ref'd n.r. e.), Tex.R.Civ.P. 272. Here Campbell wholly failed to object to the submission on the grounds that it failed to submit the controlling issue. Campbell's objections give no indication to the trial court of his complaint that the submission concerned the wrong agreement. Therefore, Campbell waived any error on that ground.

## DISPOSITION

For the reasons discussed that part of the judgment of the Court of Civil Appeals which reforms the trial court judgment is reversed and set aside, and the judgment of the trial court is affirmed.