**Ray L. BREWER, Appellant,**

v.

**TEHUACANA VENTURE, LTD. and Epps-Raible, Appellees.**

**No. B14–86–899–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

July 23, 1987.

---

Gregory Hennig, Houston, for appellant.

Joseph A. Callier, Houston, for appellees.

Before PAUL PRESSLER, MURPHY and ELLIS, JJ.

## OPINION

MURPHY, Justice.

Dr. Ray Brewer (Brewer) appeals from a judgment in favor of appellees, Tehuacana Venture, Ltd. and Epps-Raible, concerning a distribution from a limited partnership. We affirm.

On April 1, 1972, the limited partnership, Tehuacana Venture, Ltd., was formed to acquire a tract of land and ranching operation for investment purposes. Brewer purchased a 4.5 percent interest in Tehuacana, which was managed by general partner Epps-Raible, a partnership composed of Charles Epps and Fred Raible. In addition to the initial investment, the limited partners were required to meet cash calls representing their share of any costs incurred relative to partnership property. Brewer's investment prior to April 1979 totalled approximately $26,000.

On March 6, 1979, Epps-Raible notified the limited partners that a partnership contribution was due by April 1st. Brewer refused to pay his $2,050 share until Epps-Raible could demonstrate that efforts were being made to sell the property. (The property had been sold in 1974 but was later returned to Tehuacana in a foreclosure proceeding.) By letter of April 9th, Epps-Raible informed Brewer that "the operations of the Partnership Agreement pertaining to default and foreclosure will be enforced" if payment were not received within five days. Brewer did not make the payment.

On May 1, 1979, a broker contacted Fred Raible about the property, and an earnest money contract was executed on May 31st. The parties closed on the property in October, and the proceeds of the sale were distributed to the Tehuacana partners. Brewer received no money, though a distribution to him was reported on a final partnership tax return. Ultimately, Brewer sued Tehuacana Venture, Ltd. and Epps-Raible for an accounting and damages. His position was that Epps-Raible knew about the potential buyer but did not inform him, thus facilitating the taking of his share of the proceeds.

The case was tried before a jury, which found the following:

1. that on April 9, 1979, Epps-Raible did not know of the existence of a buyer for the property (Special Issue No. 1);

2. that Epps-Raible did not fail to disclose a material fact to Brewer (Special Issue No. 3);

3. that Epps-Raible, as general partner, did not intentionally and willfully breach its contracts with Brewer (Special Issue No. 4);

4. that Brewer would have made the $2,050 cash call on April 1, 1979, had Epps-Raible informed him of the potential sale of the property (Special Issue No. 6);

5. that the failure to disclose a material fact was not a proximate cause of Brewer's abandonment of the Tehuacana Venture (Special Issue No. 7);

6. that Epps-Raible, as general partner, did not comply strictly with the terms of the forfeiture covenants contained in the three agreements signed by the parties (Special Issue No. 10); and

7. that Epps-Raible, as general partner, did not breach its fiduciary duty or duties of trust to Brewer (Special Issue No. 11).

In accordance with these answers, the trial court entered judgment for Tehuacana and Epps-Raible and awarded them $15,000 attorney's fees. Brewer appeals that judgment with fourteen points of error. In his first five points he challenges the trial court's entry of judgment given the terms of the partnership agreements and the jury's answers to Special Issues Nos. 6 and 10.

Part II of the Approval Agreement between Tehuacana Venture, Ltd. and the limited partners details the obligations of the partners. In the event of a partner's failure to meet a cash call, Paragraph C provides that the general partner has the right to purchase the defaulting partner's interest upon payment of the call within ten days after the default. If the general partner fails to exercise this option within the ten-day period, then for a period of thirty days following the lapse of that option, the general partner may substitute another individual for the defaulting partner. Should a substitution not occur, then the general partner may wind up the affairs of the limited partnership and dissolve it. However, the general partner has the power to waive any such default prior to dissolution.

■ Brewer argues that following his refusal to pay the $2,050 share due April 1, 1979, Epps-Raible waived his default by not exercising the right to purchase his interest within ten days. It is undisputed that there was neither a third party substitution nor a dissolution. Furthermore, Brewer charges that Epps-Raible failed to amend the limited partnership certificate on file with the Secretary of State to reflect the change in partnership in accordance with the Texas Uniform Limited Partnership Act, Tex.Rev.Civ.Stat.Ann. art. 6132a, §§ 25, 26 (Vernon 1970).

Fred Raible testified that Epps-Raible did assume Brewer's liability by paying the call. While he admitted that the payment was not made within ten days of the default, he testified, "It was made absolutely within 10 days after our last conversation with Dr. Brewer." His explanation for the delay was the effort being made (through letters and a phone call) to get Brewer to make his payment. As Raible stated, "We wouldn't make a payment when we were talking to Dr. Brewer about making his payment. We were trying to keep him in, not get him out."

Though the jury found that Epps-Raible did not *strictly* comply with the terms of the forfeiture covenants contained in the partnership agreements (Special Issue No. 10), strict compliance is immaterial in view of the testimony that Epps-Raible did eventually buy Brewer's interest and delayed doing so only to try to convince Brewer not to default. Also, we note that Part II, Paragraph B of the Approval Agreement states the following:

No act, delay, omission or course of dealing between the Partnership and the Limited Partners shall be a waiver of any of the Partnership's rights or remedies under this Agreement and no waiver, change or modification in whole or in part of this Agreement or of any obligations shall be effective unless in writing signed by the General Partner on behalf of the Partnership.

The Epps-Raible letter of April 9, 1979, to Brewer can be construed as a written modification of the Approval Agreement, extending Brewer's payment deadline and thereby extending the default date following which Epps-Raible had ten days to purchase Brewer's interest.

Epps-Raible's failure to amend the limited partnership certificate is irrelevant. Strict compliance with the statutes is not required for the *formation* of a limited partnership as article 6132a, section 3(b) provides that a limited partnership is formed if there is substantial compliance in good faith with the requirements. *Shin-*

*dler v. Marr & Associates,* 695 S.W.2d 699, 703 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). The purpose of the filing requirements is to provide notice to third persons dealing with the partnership of the essential features of the partnership arrangement. *Garrett v. Koepke,* 569 S.W.2d 568, 570 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.). As Epps-Raible did comply with the filing requirements when Tehuacana was formed, thus accomplishing the stated purpose, an amendment to show that the general partner purchased a limited partner's interest was not required.

■ Brewer argues that the judgment is also contrary to the jury's answer to Special Issue No. 6 that he would have made the $2,050 cash call had he been informed of the potential sale of the property. However, the jury also found that Epps-Raible did not know of the existence of a buyer for the property and did not fail to disclose a material fact to Brewer. The jury's answer to Special Issue 6 does not conflict with these findings. It stands to reason that Brewer would have paid the $2,050 had he known of the potential sale, but the evidence indicates there was no potential sale at the time he defaulted. The broker, Raymond Hayes, testified that he first contacted Fred Raible about the property on May 1st and that the earnest money contract was signed on May 31st.

Brewer further argues that courts do not favor forfeitures unless compelled to do so by language that will admit no other construction. We have previously noted that Part II, Section C of the Approval Agreement specifically addresses what is to occur in the event of a partner's default. Brewer defaulted on his obligation to Tehuacana and thus forfeited his interest according to the clear language of Section C. We have already determined that Epps-Raible substantially complied with Section C. Points of error one through five are overruled.

■ In point of error six Brewer maintains that the trial court erred in not granting his motion for entry of judgment because Epps-Raible failed to distribute to him $21,764.23 from the sale of the property despite reporting such a distribution on the partnership tax return. Brewer states that this constitutes a conversion, as well as a violation of fiduciary duty.

The accountant who prepared the return testified that he mistakenly reported the distribution to Brewer, and that the general partner had cautioned him by letter to note Brewer's default and the "pick up" of his interest by Epps-Raible. The jury could believe this testimony in the absence of controverting evidence, and there was none. The jury also found in Special Issue No. 11 that Epps-Raible did not breach its fiduciary duty. Brewer does not specifically challenge this finding with a point of error on appeal, and is therefore bound by such finding. *Graham v. Turner,* 472 S.W.2d 831, 835 (Tex.Civ.App.—Waco 1971, no writ). Point of error six is overruled.

Brewer's next two points of error concern abandonment and waiver. He argues that the judgment entered by the trial court was contrary to the evidence because there was no finding by the jury in answer to the special issue on abandonment and because the evidence showed he did not abandon his interest in the limited partnership. Similarly, he argues that the judgment was contrary to the evidence because, though he requested it, there was no submission of the issue of whether he waived his interest in the limited partnership and because the evidence showed he did not do so.

■ The jury was instructed to answer Special Issue No. 5, asking whether Brewer abandoned his interest in the venture, only if they found in answer to Special Issue No. 3 that Epps-Raible failed to disclose a material fact to Brewer. The jury found no failure to disclose and thus did not address abandonment. Whether there was evidence to support an affirmative answer to the issue is therefore irrelevant. The jury made no such finding. Brewer also complains that the pleadings and defenses raised by appellees did not include abandonment as an affirmative defense. However, at trial Brewer did not object to the submission of Special Issue No. 5, and his complaint is waived on appeal. Tex.R.

Civ.P. 274; *Davis v. Campbell*, 572 S.W.2d 660, 663 (Tex.1978).

■ Concerning the omission of an issue on waiver, we have no record that such an issue was submitted. There are no tendered and denied special issues in the transcript. Also, Brewer's single objection to the charge refers to the denial of a special issue but is unclear and does not mention waiver. Finally, his motion for new trial refers only to the denial of a special issue asking the jury to find that *Epps-Raible* waived payment of the $2,050. Again, Brewer failed to preserve error, and the complaint is waived. *Davis*, 572 S.W.2d at 663. Points of error seven and eight are overruled.

Points of error nine and twelve through fourteen and Brewer's arguments in support of them are essentially a recapitulation of points of error one through five. In point of error nine he argues that the jury finding that Epps-Raible did not strictly comply with the forfeiture provisions should control over findings that Epps-Raible did not breach its duty to him. In point of error twelve Brewer maintains that the judgment is supported by insufficient evidence. Point of error thirteen states that the judgment is in error because Epps-Raible must show strict compliance with the forfeiture provisions before forfeiture can occur, and it failed to do so. Finally, in point of error fourteen, Brewer claims that the trial court erred in not granting his motion for new trial because he neither waived nor abandoned his interest by not paying the $2,050 call nor was his interest terminated under the terms of the partnership agreement.

■ We have answered most of these arguments. Regarding the insufficient evidence point, we must consider and weigh all of the evidence. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

Brewer testified that when there was no concrete evidence of a sale, he discussed with his accountant the tax consequences of staying in the partnership versus the tax consequences of not making the payment and chose the latter option. His only evidence that Epps-Raible knew of the pending sale was that the earnest money contract was signed soon after his default. He "truly felt" that Charles Epps had some knowledge of the buyer when the April 9th letter was sent. Also, he "did not believe" that Epps-Raible paid his $2,050 share and thus purchased his interest.

Brewer argues that Epps-Raible did not prove the purchase. However, Brewer's counsel elicited testimony from Fred Raible that the call was paid by check and that he had a copy of it. It was the province of the jury to judge the credibility of the witnesses and the weight to be given their testimony and to resolve any inconsistencies. *Gilliam v. Williams*, 683 S.W.2d 761, 763 (Tex.App.—Houston [14th Dist.] 1984, no writ). The testimony discussed earlier (that of Raible, the accountant and the broker) were subject to the same scrutiny. After reviewing all the evidence, we find that it is sufficient to support the jury's findings and the judgment. Points of error nine and twelve through fourteen are thus overruled.

In points of error ten and eleven Brewer challenges the award of $15,000 attorney's fees to appellees as being contrary to the evidence and the verdict of the jury and not supported by the pleadings. In their pleadings both parties requested reasonable attorney's fees based on Section 9 of the Financing Agreement, which read as follows:

> In the event either party hereto shall default upon his covenants and agreements herein, then the prevailing party hereto shall be entitled to reasonable attorney's fees for the enforcement of same.

At trial the parties agreed that the court would decide the amount of fees, which it did based on the testimony of appellees' counsel. In light of our review of the evidence and the jury's findings, we affirm the judgment of the trial court, including the award of attorney's fees to appellees.

As a final note, appellees request that Brewer be assessed damages pursuant to

Tex.R.App.P. 84 for filing an appeal without sufficient cause. We deny this request as we do not find the appeal to be totally without merit.