COMPREHENSIVE CARE CORPORATION, Appellant,

v.

Dianne BOSCH, Appellee.

No. 07–95–0036–CV.

Court of Appeals of Texas, Amarillo.

May 24, 1995.

Rehearing Overruled June 15, 1995.

**436**

Gibson, Ochsner & Adkins, S. Tom Morris, Amarillo, for appellant.

Hester, McGlasson & Cox, Chuck Hester, Canyon, for appellee.

Before REYNOLDS, C.J., and BOYD and QUINN, JJ.

REYNOLDS, Chief Justice.

Aggrieved by the instructed verdict rendered against it in Dianne Bosch's action for breach of a severance pay agreement, Comprehensive Care Corporation contends, with one point of error, that the trial court erred in granting Bosch's motion for judgment, and in denying its motion therefor, because, under the terms of the clear and unambiguous contract, it was entitled to judgment as a matter of law. Agreeing, we will reverse and render.

Experiencing financial and managerial dilemmas, Comprehensive Care Corporation (CompCare) extended to Bosch, an at-will employee of the corporation since September of 1985, a "severance agreement" intended as an incentive for her to remain with the company throughout periods of instability.[1] The agreement provided that if Bosch's employ-

ment with CompCare was terminated for any reason, with or without cause, following a "Change of Control," the company would pay to her severance compensation in an amount equal to one year of her base salary. The pertinent section of the severance agreement, the only section on which evidence was offered in the trial court,[2] deemed a "Change of Control" to have occurred if:

> prior to 31 December 1990, ... (iv) during the period of two (2) consecutive years, individuals who at the beginning of such period constitute the entire Board of Directors shall cease for any reason to constitute a majority thereof unless the election, or the nomination for election by the Company's stockholders, or each new director was approved by a vote of at least two-thirds of the directors then still in office who were directors at the beginning of the period, ...

Bosch signed the agreement on 11 January 1990.

Disenchanted by CompCare's financial woes, a dissident group of shareholders commenced, in July of 1990, soliciting consent and proxy votes to enable them to remove the corporation's incumbent board of directors and elect a new board. The Delaware law under which CompCare was incorporated established the effective deadline for receipt of the consents and proxies, and the revocation of them, as 4:30 p.m., Eastern Daylight Time, on 19 August 1990.

Anticipating that the dissident group would prevail in its undertaking, the incumbent board of directors conducted a special meeting beginning on 18 August 1990 and concluding the following day. The minutes of that meeting reveal that the board members, upon learning that the dissident group had obtained consents from at least 58% of the outstanding shares, determined that it would be in the best interests of the corporation to approve the nomination and election of the dissident group's nominees for the board of directors. The board also determined that CompCare had received sufficient

---

1. The same agreement was extended to, and accepted by, several key employees of CompCare.

2. Other sections of the agreement, *i.e.*, sub-sections (i) through (iii) and (v), specified methods by which a change of control could be effectuated.

proxies to elect one director by cumulative voting.

The board's determination to approve the dissident group's nominees was founded, in part, upon the fact that, in addition to triggering the severance pay agreements offered to Bosch and other key employees, a "Change of Control" would also have activated the acceleration provisions of senior secured debt instruments held by several of the company's creditors, thereby threatening CompCare with insolvency. Consequently, the members of the board, with two members abstaining, passed a resolution approving the dissident group's nominees, and directed that the proxies received in response to its solicitation be used to execute consents to re-elect James Nicol, one of the incumbent directors.[3]

On 20 August 1990, a consent election was conducted, and a new board of directors was elected, replacing all of the incumbent directors except James Nicol. Less than two years later, on 9 March 1992, Bosch was terminated. Upon CompCare's refusal to compensate her with the full year salary to which she considered herself entitled under the terms of the severance agreement, she filed the action underlying this appeal in December of 1992.

The cause proceeded to trial before a jury in mid-December of 1994. After the close of Bosch's case-in-chief, the trial court, deeming there was no fact issue, entertained both parties' motions for judgment and withdrew the cause from the jury. Determining that, as a matter of law, Bosch was entitled to, and should, recover severance pay in an amount equal to one year of her base salary under the terms of the severance agreement, the court granted her motion for judgment, denied CompCare's motion, and rendered judgment accordingly, including an award of attorney's fees to Bosch.

By its sole point of error, CompCare contends the trial court erred "in denying Defendant's Motion for Judgment At The Close of Plaintiff's Case, in granting Plaintiff's Motion for Judgment, and in denying Defendant's Motion for Rehearing because under the clear and unambiguous contract and the undisputed facts [CompCare was] entitled to judgment as a matter of law." We agree.

The trial court, with the concurrence of the parties, treated the question of whether there was a change of control within the definition of the severance agreement as one of law. Then, because there were no fact issues raised by the evidence to be submitted to the jury, the trial court could, even of its own volition, instruct a verdict for either of the parties. *In re Price's Estate,* 375 S.W.2d 900, 904 (Tex.1964). The propriety of the court's granting Bosch's motion for judgment, and denying CompCare's motion for judgment, depends upon whether the court decided the question of law correctly.

As a threshold matter, we notice Bosch's appellate assertion that "[i]f [this] court views the severance agreement in light of all the circumstances which existed at the time it was signed by the parties and in view of the interpretation placed upon the contract by the Defendant, [this] court may well conclude that there is an ambiguity in the agreement." We do not reach that conclusion.

 The question whether the severance agreement is ambiguous is a question of law for the court; and, because the agreement is so worded that it can be given a certain legal meaning, it is not ambiguous, and we will construe it as a matter of law. *Coker v. Coker,* 650 S.W.2d 391, 393–94 (Tex. 1983). Conformably, in the trial court, both parties agreed that the severance agreement was unambiguous, though each asserted varying interpretations of the "Change of Control" provisions of that agreement. However, their mere disagreement over the interpretation of the agreement does not make it ambiguous. *Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 727 (Tex.1982). Thus, we will give effect to the objective intention of the parties as expressed or as is apparent in the agreement. *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968).

The determinative question is whether there was a "change of control" of CompCare within the definition of sub-section (iv) of the

---

**3.** Nicol was one of the two members who abstained from voting.

severance agreement so as to trigger Bosch's entitlement to severance pay of her annual base salary. At the outset of our consideration of the question, we observe that, in response to CompCare's statement that she did not prove a change of control occurred, Bosch construes the statement as placing upon her the burden of proof of the occurrence or nonoccurrence of a condition precedent. She asserts that, in the absence of a specific denial by CompCare as to which event regarding a change of control had not occurred, she did not assume that higher burden of proof.

We are not persuaded to credit Bosch's response for three reasons. First, CompCare did lodge specific denials against the allegations in Bosch's original petition, identifying the condition precedent purportedly unperformed. *See* Tex.R.Civ.P. 54. In answering the petition, in paragraph II of which Bosch alleged that "[u]nder the terms of the contract [Bosch] and [CompCare] agreed that [CompCare] would pay [Bosch] an amount equal to one year's salary upon termination of employment for any reason," CompCare

> specially denie[d] the allegations of Paragraph II of the Petition, ... and further specially denie[d] the allegation contained in Paragraph IV that "all conditions precedent ... to defendant's liability under the contract have occurred or have been performed by plaintiff."

Second, the issue whether there was a change of control within the meaning of sub-section (iv) of the agreement was tried by consent, or at least without objection, and, consequently, Bosch may not raise the insufficiency of CompCare's answer for the first time on appeal. Tex.R.Civ.P. 90; Tex. R.App.P. 52(a); *Bednarz v. State*, 142 Tex. 138, 176 S.W.2d 562, 563 (1944). And third, Bosch waived the complaint now made by voluntarily assuming, at trial, the burden of

proving that a change of control as defined in paragraph (iv) of the agreement had occurred.[4]

In challenging the trial court's judgment, CompCare asserts that by the terms of the agreement, Bosch's right to the severance payment was conditional; that is, the condition precedent of her being terminated after a change of control must occur. Stated another way, if she was terminated after a change of control, she was entitled to severance pay of $34,000; if there was no change of control, she was not entitled to the pay. Then, CompCare reasons, Bosch was not entitled to severance pay because a change of control, specified by sub-section (iv) of the agreement, did not occur, because more than two-thirds of the incumbent board of directors, while still in office, approved the nomination for election by CompCare's stockholders of the new directors.

Disputing CompCare's reasoning, Bosch presents two arguments to show that the incumbent board of directors was removed and a new board was elected to establish that a change of control occurred. Initially, she submits that the incumbent board's action was a nullity because the members were effectively "removed" when it became known before their action that the dissident shareholders had obtained a sufficient number of consent votes to replace them without their consent. Thus, the action was an effort to "rubber stamp" the directors elected by the shareholders in an effort to avoid triggering the severance agreements and other financial arrangements. Her other submission is that regardless of any approval of the incoming board by the incumbent board, the shareholders on 20 August 1990 voted to remove all current directors and elected their own directors without the approval of the incumbent board, thereby effectively constituting a change of control within the terms of the agreement.

4. We have not overlooked Bosch's representation that when the dissident group of shareholders prevailed in the proxy fight, a change of control occurred within the purview of sub-section (iii) of the agreement, which provides that a change of control occurs if, prior to 31 December 1990, any person shall become the beneficial owner of 20% or more of CompCare's outstanding common stock; however, not only did Bosch fail to evince that any person became the beneficial owner of 20% or more of the stock, but she did not present this theory of recovery in the trial court, thereby being restricted to the theory that a change of control occurred as defined in sub-section (iv) of the agreement. *Davis v. Campbell*, 572 S.W.2d 660, 662 (Tex.1978).

We cannot accept that the incumbent board's approval action was a nullity or without legal effect. The action was taken on 19 August 1990 while the board was the duly constituted director of the corporate affairs, with each member holding office, under Delaware General Corporation Law § 141(b), "until his successor is elected and qualified or until his earlier resignation or removal." The successor board was not elected until the following day, 20 August 1990. Given the board's authorized action, neither can we accept Bosch's equitable argument that, in effect, the "rubber stamp" vote on a *fait accompli* was an invalid attempt to divest her and other employees of accrued rights to severance compensation.

■ To accept Bosch's arguments would render meaningless the subsection (iv) clause beginning with the word "unless," which is an integral part of the definition of a change of control when the incumbent directors cease to be a majority of the board. Indeed, her arguments lead to the logical conclusion that no outgoing board of directors could *ever* approve the incoming slate of directors. To the contrary, the unambiguous language of the agreement denotes a clear intention of the parties that a change of control would *not* be deemed to have occurred if two-thirds of the incumbent directors approved the nominees for the incoming board. We are bound to give effect to the written expression of the parties' intent. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994). Therefore, since the record is clear that at least two-thirds of the incumbent directors, while controlling the affairs of the corporation, approved the nomination of new directors for election by the stockholders, it follows that a change of control, as defined in sub-section (iv) of the agreement, did not occur so as to invoke Bosch's entitlement to the severance pay prescribed by the agreement. Thus, rather than ascribing to the agreement the meaning Bosch advocates, which is different from that which it clearly imports, all we may do is enforce the agreement the parties agreed upon. *Stahl Petroleum Co. v. Phillips Petroleum Co.*, 550 S.W.2d 360, 369 (Tex. Civ.App.—Amarillo 1977), *aff'd*, 569 S.W.2d 480 (Tex.1978).

Accordingly, the trial court's judgment is reversed, and judgment is here rendered that Dianne Bosch take nothing by her action against Comprehensive Care Corporation.