# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00164-CV

### LMV-AL Ventures, LLC, Appellant

### v.

### Carol Hemphill, Appellee

### FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. C-1-CV-18-008784, THE HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

LMV-AL Ventures, LLC, (LMV) appeals from an order dismissing its claims against Carol Hemphill pursuant to the Texas Citizens' Participation Act (TCPA). *See* Tex. Civ. Prac. & Rem. Code §§ 27.001–.011.[1] LMV sued Hemphill in connection with her statements criticizing The Harbor at Lakeway, an assisted living facility run by LMV. We will affirm the trial court's order.

---

[1] All citations in this opinion to the TCPA are to the version in effect before the September 2019 amendments became effective. *See* Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 961–64 (current version at Tex. Civ. Prac. & Rem. Code §§ 27.001–.011), *amended by* Act of May 24, 2013, 83d Leg., R.S., ch. 1042, §§ 1–3, 5, 2013 Tex. Gen. Laws 2499, 2499–500 (the version at issue in this opinion); *see also* Act of May 20, 2019, 86th Leg., R.S., H.B. 2730, §§ 1–9 (the 2019 amendments), 11–12 (providing that a suit filed before the amendments become effective "is governed by the law in effect immediately before that date").

## BACKGROUND[2]

Hemphill is the legal guardian of her brother, John Hurley. Hurley has not been able to live independently since suffering a brain injury from an illness. In February 2016, Hemphill decided to move Hurley to The Harbor. Prior to the move, The Harbor's staff assessed Hurley to determine the care he required. The assessment reflects that while Hurley was capable of performing daily tasks independently, his "[j]udgment and memory are not always good. Needs monitoring and guidance and occasional redirection." Hemphill executed a rental agreement specifying his "level of care," i.e., the services Hurley would receive.

According to Hemphill, her brother's health declined during the next eighteen months. He gained a substantial amount of weight, experienced serious tooth decay, developed high blood pressure and cholesterol, and often went up to a week at a time without bathing, brushing his teeth, or changing his clothes. Hemphill attributed the change to the staff's failure to remind her brother to take his medication and to tend to his personal hygiene—tasks Hurley could perform if prompted. They also, in her view, failed to ensure he followed the restricted diet recommended by his physician.

In September 2017, Hemphill sent a letter detailing all her concerns to John Redford, the Harbor's executive director, and Paul DeNucci, LMV's principal. Hemphill alleges Hurley was evicted as a result of the letter, while The Harbor maintains that Hemphill terminated the rental agreement herself. Regardless of the cause, September 2017 was Hurley's last month at The Harbor. During that month, Hemphill filed a complaint with the Texas Department of

---

[2] We draw these facts from the live pleadings and the parties' supporting and opposing affidavits. *See* Tex. Civ. Prac. & Rem. Code § 27.006(a) (directing courts deciding whether to dismiss under TCPA to "consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based").

Health and Human Services (HHS) and left a review of The Harbor on senioradvisor.com and Google reviews.[3] The complaint resulted in an unannounced inspection of The Harbor on September 6, 2017, which The Harbor alleges forced them to cancel a training session for its staff and lose the presenter's $5,000 fee.[4] The review states:

> I wish I could give fewer stars. The Harbor has been unable to provide the simplest of personal care – reminders. Found my loved one after a week in the same clothing, underwear and socks and he had not bathed or taken a shower. Nor do they follow doctor ordered specific diets (although they say they can) which results in declined health and well-being. If you want your loved one to have happy hour as many as 5 days a week (but always 3), then this is the place for you. There has been constant staff turnover resulting in lack of continuity of care and communication. The worst thing is that they are unresponsive to complaints about care and neglect and instead blame the resident, the family[,] and evict you for fraudulent reasons. They seem to have no understanding of the waters navigated by caregivers and family when a loved-one is in a facility.

Hurley moved out of The Harbor on October 2, 2017.

LMV sold The Harbor the following year. Shortly after the sale, Misty Knight left her position there to become director of nursing at an independent living facility in Georgetown. Knight met with Hemphill and others at that facility the following month. The record does not reflect the reason for the meeting, but Knight alleges in an affidavit that Hemphill told those in attendance that "she knew that Paul DeNucci had to sell [T]he Harbor because State authorities made him sell it." Knight responded that she "did not believe Mr. DeNucci had sold [T]he Harbor because of any improper conduct, but [Hemphill] was insistent."

---

[3] Hemphill left the same review on both websites, but senioradvisor.com deleted the word "neglect" and replaced it with "[Removed]."

[4] HHS later informed Hemphill by letter that it determined The Harbor was complying with all "rules or regulations related to your concerns."

3

LMV sued Hemphill for business disparagement, tortious interference with an existing contract, and defamation. Hemphill filed a motion to dismiss these claims under the TCPA, and LMV filed a response with affidavits from DeNucci, Redford, and Knight. LMV subsequently nonsuited its claim for tortious interference with an existing contract. The trial court dismissed all of LMV's claims and awarded Hemphill fees and sanctions as required by the TCPA. LMV timely appealed.

## DISCUSSION

"Reviewing a TCPA motion to dismiss requires a three-step analysis." *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). As a threshold matter, the moving party must show by a preponderance of the evidence that the TCPA applies to the legal action against it. Tex. Civ. Prac. & Rem. Code § 27.005(b). If the moving party meets that burden, the nonmoving party must establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id*. § 27.005(c). If the nonmoving party satisfies that requirement, the burden shift backs to the moving party to prove each essential element of any valid defense by a preponderance of the evidence. *Id*. § 27.005(d). Courts determining whether to grant a TCPA dismissal motion are to consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id*. § 27.006(a). We review de novo whether a party carried its assigned burden. *Long Canyon Phase II & III Homeowners Ass'n v. Cashion*, 517 S.W.3d 212, 217 (Tex. App.—Austin 2017, no pet.).

Conceding that Hemphill demonstrated the TCPA applies, LMV argues that it established a prima facie case of defamation and business disparagement by clear and specific

4

evidence.[5]  A prima facie case "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted."  *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding).  Stated differently, "[i]t is the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'"  *Id*. (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (per curiam)).  "Clear and specific evidence" means that "more than mere notice pleading" is required to establish a prima facie case.  *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (per curiam).  The plaintiff "must provide enough detail to show the factual basis for its claim."  *Id.* (quoting *In re Lipsky*, 460 S.W.3d at 591).

**Defamation**

LMV asserted two defamation claims—one arising from the online review and a second claim arising from Hemphill's statements to Knight.[6]  The essential elements of defamation are:  (1) publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) that proximately caused damages, unless the statement is defamatory per se.  *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017); *see Brady v. Klentzman*, 515 S.W.3d 878, 886 (Tex. 2017) (distinguishing defamation per se and per quod for purposes of damages).

"In a defamation case, the threshold question is whether the words used 'are reasonably capable of a defamatory meaning.'"  *Dallas Morning News v. Tatum*, 554 S.W.3d

---

[5]  LMV does not appeal the dismissal of its nonsuited claim or the award of fees or sanctions pertaining to that claim.

[6]  We note that Hemphill admits authorship of the online reviews but denies making the oral statements attributed to her by Knight.

614, 624 (Tex. 2018) (quoting *Musser v. Smith Protective Servs.*, 723 S.W.2d 653, 654 (Tex. 1987)). In making this initial determination, we examine the statement's "gist." *Rosenthal*, 529 S.W.3d at 434. That is, we construe the statement "as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it." *Id.* (quoting *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000)). This analysis is objective and involves two independent steps. *Tatum*, 554 S.W.3d at 625. The first step is to decide "whether the meaning the plaintiff alleges is reasonably capable of arising from the text of which the plaintiff complains." *Id.* The second is to determine whether that meaning, if reasonably capable of arising from the text, "is reasonably capable of defaming the plaintiff." *Id.*

Generally, a statement is defamatory if it "tends to injure a person's reputation and thereby expose the person to public hatred, contempt, ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." *Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings*, 219 S.W.3d 563, 580 (Tex. App.—Austin 2007, pet. denied) (citing Tex. Civ. Prac. & Rem. Code § 73.001). Defamation is either per se or per quod. *Id.* Defamation per se occurs when a statement is "so obviously detrimental to one's good name that a jury may presume general damages, such as for loss of reputation or for mental anguish." *Tatum*, 554 S.W.3d at 624 (citing *Hancock v. Variyam*, 400 S.W.3d 59, 63–64 (Tex. 2013)). Statements that injure a person in their office, profession, or occupation typically constitute defamation per se. *Id.* To qualify as defamation per se under this category, the statement must "affect the plaintiff in some manner that is peculiarly harmful to the plaintiff's trade, business, or profession and not merely upon the plaintiff's general characteristics." *In re Lipsky*, 460 S.W.3d at 596 (citing *Hancock*, 400 S.W.3d at 66–67). On the other hand, defamation per quod is

defamation that is not actionable per se. *Tatum*, 554 S.W.3d at 624. We begin with the question of whether Hemphill's statements are defamatory per se.

*Review*

LMV argues the gist of the review "is that The Harbor failed to provide the level of care [to Hurley that] they were supposed to" under the rental agreement. The review does not mention the rental agreement, but LMV reasons that accusing it of failing to provide certain care necessarily implies that LMV was contractually obligated to provide that care. We disagree. The review describes Hurley's poor condition, alleges various omissions by The Harbor's staff that allegedly caused it, and contends The Harbor's staff were unable or unwilling to rectify these problems. While we agree that the review asserts LMV should have provided additional care, a reasonable person would not perceive the review as stating LMV breached a contract by failing to provide that care. Rather, a reasonable construction of the review is simply that LMV failed to provide Hurley with needed care, resulting in his poor condition.

Hemphill argues this accusation alone is not defamatory per se because the alleged failure to care for Hurley does not necessarily call into question LMV's fitness as a provider of assisted living services. On the arguments before us, we agree. LMV insists that it is was not improper to refuse to provide Hurley with any additional care because the rental agreement did not require it, and LMV had the legal right to refuse to provide any care not required by the agreement. *See* 26 Tex. Admin. Code § 553.125(b)(2)(E) (Tex. Health and Human Servs., Resident's Bill of Rights and Provider's Bill of Rights) (stating that providers of assisted living services may "refuse to perform services for the resident or the resident's family other than those contracted for by the resident and the provider"). Additionally, LMV contends

7

that it could not legally provide additional care because Hurley had the right to make his own decisions regarding clothing, bathing, and diet. *See id.* § 553.125(a)(E)(i), (T) (providing that each resident "has the right to make his/her own choices regarding personal affairs, care, benefits, and services" and to "determine his or her dress, hair style, [and] other personal effects"). Whether or not LMV is correct on these matters, (an issue we do not decide here), LMV's entire argument on appeal presumes that the conduct alleged in the review—failing to remind Hurley to bathe and change clothes and to ensure he followed a doctor-ordered diet— could have been the proper course of action for a provider of assisted-living services. We conclude based on the arguments before us that the review does not accuse LMV of conduct "peculiarly harmful" to its reputation for providing assisted living services. *See In re Lipsky*, 460 S.W.3d at 596; *Hancock*, 400 S.W.3d at 66–67. The review is not defamatory per se.

### *Oral statements*

The parties also dispute whether Hemphill's comment during the meeting with Knight that "she knew that Paul DeNucci had to sell [T]he Harbor because State authorities made him sell it" constitutes defamation per se. LMV contends that Hemphill's accusation of a forced sale "adversely reflect[s] on LMV's fitness to conduct it business" because a forced sale implies either misconduct by DeNucci or "deficiencies" in the care The Harbor provided. To show that a factual statement carries a defamatory implication, the "plaintiff must point to 'additional, affirmative evidence' within the [statement] itself that suggests the defendant 'intends or endorses the defamatory inference.'" *Tatum*, 554 S.W.3d at 635 (quoting *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990)). LMV relies wholly on Knight's affidavit to carry this burden. Knight states that she told Hemphill that she "did not

8

believe Mr. DeNucci had sold [T]he Harbor because of any improper conduct, but [Hemphill] was insistent." While an allegation that its principal was involved in misconduct might impugn a corporation's general characteristics, standing alone it is not "peculiarly harmful" to a reputation for operating assisted living centers. *See In re Lipsky*, 460 S.W.3d at 596; *Hancock*, 400 S.W.3d at 66–67. LMV also contends that Hemphill's statement implies the sale was forced due to deficiencies in the care provided to The Harbor's residents, but LMV does not direct us to any "additional, affirmative evidence" supporting that implication. *See Tatum*, 554 S.W.3d at 635. Hemphill's statement does not constitute defamation per se.

### *Damages*

Our conclusion that the review and Hemphill's oral statements are not defamatory per se means that LMV must have presented prima facie evidence of its damages to overcome Hemphill's dismissal motion. *See Rosenthal*, 529 S.W.3d at 434 (stating damages are essential element of defamation claim "unless the statement constitutes defamation per se" (citing *In re Lipsky*, 460 S.W.3d at 593)); *see also Waste Mgmt. of Texas, Inc. v. Texas Disposal Sys. Landfill*, 434 S.W.3d 142, 146 n.7 (Tex. 2014) (noting that "[d]efamation per se . . . requires no proof of actual monetary damages"). LMV does not dispute that it produced no evidence to satisfy this element for either claim. We conclude LMV failed to establish a prima facie case for either of its defamation claims, and we overrule its first issue.

### Business Disparagement

LMV's business disparagement claim also pertains to the online review. "To recover for business disparagement, 'a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted

in special damages to the plaintiff.'" *Waste Mgmt. of Tex.*, 434 S.W.3d at 155 (quoting *Forbes Inc. v. Granada Biosciences*, 124 S.W.3d 167, 170 (Tex. 2003)). Special damages "are economic damages such as for lost income." *Id.* (quoting *Hancock*, 400 S.W.3d at 65). LMV argues that it produced clear and specific evidence that Hemphill's complaint to HHS resulted in the loss of the presenter's fee. However, the causal link between the complaint and later disruption of the speaker's presentation is not evident from the record. Further, LMV argued in the court below that the lost presenter's fee constituted its damages for tortious interference with a contract, not business disparagement. "Parties are restricted on appeal to the theory on which the case was tried." *Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 916 (Tex. 2015) (quoting *Davis v. Campbell*, 572 S.W.2d 660, 662 (Tex.1978)). "Appellate courts are similarly restricted and may not overlook the parties' trial theories." *Id*. LMV therefore may not rely on the loss of the presenter's fee as evidence of economic damages. And with no other evidence of damages in the record, we conclude LMV failed to establish a prima facie case of special damages. We overrule LMV's second issue.

## CONCLUSION

Having overruled LMV's issues on appeal, we affirm the trial court's order.

_____

Edward Smith, Justice

Before Chief Justice Rose, Justices Kelly and Smith
  Concurring Opinion by Chief Justice Rose

Affirmed

Filed: March 6, 2020

10