# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 8, 2017 Session

## STATE OF TENNESSEE v. JANET MICHELLE STANFIELD, TONY ALAN WINSETT and JUSTIN BRADLEY STANFIELD

**Appeal by Permission from the Court of Criminal Appeals
Circuit Court for Obion County
No. CC-15-CR-84      Jeff Parham, Circuit Court Judge**

———————————————————

## No. W2015-02503-SC-R11-CD

———————————————————

An Obion County grand jury indicted Tony Alan Winsett, Janet Michelle Stanfield, and Justin Bradley Stanfield for multiple drug and weapons charges based on the warrantless search of their home and the subsequent automobile stop involving defendants Winsett and Janet Stanfield. The defendants filed motions to suppress the evidence against them based on an allegedly improper search. Following a suppression hearing, the trial court granted the defendants' motions and dismissed the charges against them. The Court of Criminal Appeals affirmed the trial court's ruling. The State then filed an application for permission to appeal to this Court. *See* Tenn. R. App. P. 11(a). We granted the State's application and, upon review, hold that, with respect to defendants Winsett and Janet Stanfield, the warrantless search of the residence was constitutionally permissible based on defendant Winsett's status as a parolee and the doctrine of common authority. However, we conclude that the warrantless search with respect to defendant Justin Stanfield was constitutionally unreasonable because he retained a reasonable expectation of privacy in his bedroom and the State failed to carry its burden of proving that defendant Winsett exercised common authority over Justin Stanfield's bedroom. Accordingly, we affirm in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed in Part; Reversed in Part; Remanded to the Trial Court.**

ROGER A. PAGE, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK and HOLLY KIRBY, JJ., joined. SHARON G. LEE, J., filed a separate opinion dissenting in part and concurring in part in the judgment.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Jeffrey D. Zentner, Assistant Attorney General; Tommy A. Thomas, District Attorney General; and James T. Cannon, Assistant District Attorney General, for the Appellant, State of Tennessee.

Beau E. Pemberton, Dresden, Tennessee, for the Appellee, Janet Michelle Stanfield.

Charles S. Kelly, Sr., Dyersbug, Tennessee, for the Appellee, Tony Alan Winsett.

Bruce B. Brown, Union City, Tennessee, for the Appellee, Justin Bradley Stanfield.

**OPINION**

This matter involves the warrantless search of a Union City residence shared by defendant Janet Michelle Stanfield (Janet)[1]; her boyfriend, defendant Tony Alan Winsett (Tony); and her adult son, defendant Justin Bradley Stanfield (Justin). Based on the evidence seized pursuant to the search of the residence and the subsequent automobile stop involving defendants Winsett and Janet Stanfield, an Obion County Grand Jury indicted Tony (a parolee) and Janet (a probationer)[2] for possession of 0.5 grams or more of methamphetamine with intent to sell or deliver, a Class B felony; unlawful possession of a firearm after having been convicted of a felony involving drugs, a Class D felony; and possession of drug paraphernalia, a Class A misdemeanor. *See* Tenn. Code Ann. §§ 39-17-434(a)(4); 39-17-1307(b)(1) (West 2015); 39-17-425(a). Defendant Winsett was also indicted for attempting to elude a law enforcement officer, creating a risk of death or injury to innocent bystanders or other third parties, a Class D felony. *See id.* § 39-16-603(b)(1). Janet Stanfield was separately indicted for unlawful possession of alprazolam with the intent to sell or deliver, a Class D felony. *See id*. § 39-17-417(a)(4), -(d)(1). Janet Stanfield's son Justin was indicted for possession of not less than one-half (1/2)

---

[1]    Because two of the defendants share the same surname, we will occasionally refer to all parties by their first names. In doing so, we intend no disrespect.

[2]    Although we refer to Janet Stanfield as a "probationer," she was actually serving a community corrections sentence. The terms "community corrections" and "probation" are not synonymous. A violation of either program subjects the defendant to revocation proceedings. *State v. McNack*, 356 S.W.3d 906, 911 (Tenn. 2011) (citation omitted). However, if a community corrections offender is subject to revocation, he or she will receive credit for time spent in the program, *see* Tenn. Code Ann. § 40-36-106(e)(4), whereas a probationer will not, *see id.* § 40-35-310.

ounce nor more than ten (10) pounds of marijuana with the intent to sell or deliver, a Class E felony. *See id.* § 39-17-417(a)(4), -(g).

## I. Facts and Procedural History

On April 6, 2015, defendant Janet Stanfield lived with her boyfriend, defendant Tony Winsett, and her adult son, defendant Justin Stanfield, in a residence in Union City, Tennessee. Janet was serving a community corrections sentence for a 2012 felony conviction for promotion of the manufacture of methamphetamine. Defendant Winsett was on parole for felony convictions for possession of a controlled substance with intent to sell/deliver and promotion of the manufacture of methamphetamine. Justin was not on any form of supervised release.

On April 6, Union City Police Officer Ben Yates, while working with the drug task force, conducted a parole search[3] at the residence of defendant Winsett. Officer Yates contacted a parole officer to obtain a copy of defendant Winsett's parole certificate, but at the time of his arrival at the residence, between 1:00 and 3:00 p.m., he was unaccompanied by a parole or probation officer and did not first obtain a search warrant. Officer Yates was acting upon information that he received from a confidential informant, who told Officer Yates that defendant Winsett was using methamphetamine and "possibly injecting with needles." The informant had previously supplied Officer Yates with reliable and credible information that had developed a narcotics case. Officer Yates had met defendant Winsett through his "line of work" and was aware that defendant Winsett was a parolee and that Janet Stanfield resided with him. He had observed Justin Stanfield's vehicle at the residence several times, so he had reason to believe that Justin also lived there. Officer Yates, together with Investigator David Crocker and Agent James Hall, responded to the Winsett residence.

When they arrived at the residence, Agent Hall observed a burn pile upon which some clear, very large, plastic vacuum-sealed bags had been discarded. The bags were dry although it had been raining only ten to fifteen minutes earlier, which indicated to Officer Yates that the bags had been recently placed on the pile. After further investigation, he determined that the bags contained marijuana residue.

---

[3] As discussed *infra*, as a condition of defendant Winsett's parole, Winsett signed a Parole Certificate stating, among other things, that "I will agree to a search, without a warrant, of my person, vehicle, property, or place of residence by any Probation/Parole officer or law enforcement officer, at any time without reasonable suspicion."

Officer Yates knocked on the front door. Investigator Crocker simultaneously knocked on the back door, but no one answered at either door. There were no cars visible in the driveway. The police continued to knock on the doors for approximately ten to twenty minutes. While Investigator Crocker and Agent Hall continued knocking at both entry doors, Officer Yates noted an open window on the north side of the residence and proceeded toward it. Through the window he could hear movement inside the house, which sounded to him "like a running noise." Noting the presence of security cameras around the house and the recently discarded plastic bags, Officer Yates believed someone was present inside the residence destroying evidence.

Based upon this belief, Agent Hall used a pocket knife to gain entry through the front door of the residence. As soon as the officers entered the residence, they detected a "very strong odor of marijuana." A large dog, estimated to weigh 140 pounds, was in the living room. Officer Yates attributed the sounds he had heard to the dog. The dog had not made any other noise, such as barking, other than the "running noise." After entering, officers noted three bedrooms with open doors. One of the bedrooms was used as storage and was uninhabitable. The officers ascertained which of the other two bedrooms belonged to whom. Officer Yates recognized defendant Winsett's bedroom because he observed a jacket that he had seen Winsett wearing on previous occasions. He knew that defendants Winsett and Janet Stanfield had been in a relationship for some time and observed articles of women's clothing; thus, he identified that bedroom as being jointly occupied by those two defendants. In Justin's bedroom, officers found an identification card from Justin's place of employment and a piece of mail addressed to him in a closed drawer of a nightstand.

Officer Yates searched the bedroom occupied by defendants Winsett and Janet Stanfield. In it they seized a 9mm Smith & Wesson handgun and thirty-five rounds of ammunition. The serial number had been scratched off the handgun. They also seized a plastic box containing several sets of clear plastic bags, a set of digital scales, a marijuana pipe, and a small blue flashlight. Upon discovering that the flashlight did not work, Officer Yates unscrewed the battery compartment and found a small bag of a substance that he recognized as methamphetamine. Investigator Crocker located a pill container that contained methamphetamine inside the pocket of a black leather jacket. Agent Hall found a large pickle jar in Justin's bedroom, concealed inside a wooden television stand, that contained approximately seven ounces of marijuana. Agent Hall also seized a Glock 22 .40 caliber handgun and fifteen rounds from that room.

Meanwhile, Officer Yates observed a television monitor in the master bedroom that showed live video feed from the security cameras placed around the outside of the residence. He noted that Justin's vehicle passed by the residence very slowly then accelerated at a high rate of speed. Officers left the residence and conducted a traffic stop of Justin's car. Nothing was seized from the vehicle, and Officer Yates advised Justin of his *Miranda* rights and placed him in custody. Officer Yates asked Justin if he sold marijuana. At first he denied it but subsequently admitted that he did, in fact, sell marijuana. Officer Yates requested consent to search Justin's cellular telephone, which he granted. When Justin unlocked the telephone, Officer Yates saw a message to the effect of "Deleting All Messages." He knew that at the initiation of the traffic stop, Justin had deleted all of the information on his telephone. As the messages were deleting, a new text message appeared. Justin acknowledged that it pertained to a sale of one ounce of marijuana. Justin arranged a location to meet the buyer; an officer then transported Justin to the jail while Officer Yates drove to the predetermined meeting place to confront the would-be purchaser, at which time he placed the man under arrest.

During the narcotics operation involving Justin's would-be purchaser, a vehicle matching the description of defendant Winsett's vehicle drove past. Officer Yates called Agent Hall and advised him of the sighting. Agent Hall located the vehicle and began pursuing it, but the driver of the vehicle would not stop. Officer Yates activated his emergency equipment and went to assist Agent Hall. When Officer Yates arrived, Agent Hall had already placed the driver, defendant Winsett, in custody, and Janet, the front seat passenger, had been detained. Both defendants were advised of their *Miranda* rights, and officers began a search of the vehicle. Agent Hall confiscated four alprazolam pills and $238 in currency from Janet's purse. Defendants Winsett and Janet Stanfield were arrested based on the incriminating evidence found in the residence and from Janet's person during the vehicle stop.

Prior to trial, defendants filed motions to suppress the evidence obtained as a result of the warrantless search. The trial court made the following findings of fact and conclusions of law:

> Upon entering the residence, [law enforcement officers] determined that there were no people present. They cleared the house, was the testimony. By that, they went room to room and verified that there was no one present at that location. And at that point the officer also said that they could smell the odor of marijuana, although, it wasn't testified as to whether that was the odor of raw marijuana or smoked marijuana. And the testimony was that they did not have a probation officer with them. But I

- 5 -

think, under the *Turner* case, . . . that is not fatal to this matter, that the officers could in fact go and do the parole search.

What the Court is having trouble with here, though, is while they were in the residence and had cleared the residence and had secured the residence, they clearly had probable cause to get a warrant. However, acting upon their belief that they could just unilaterally search anything within the residence, including opening drawers, and they entered – let me go back. That they entered this residence believing someone was destroying evidence, which, once they secured the residence they could find that, that wasn't happening.

So, the Court in this case finds that, once they entered the residence and had secured it, the Court finds that at that point they should have gotten a warrant, that with no one present, there was no harm, there [were] no exigent circumstances to justify the continued Fourth Amendment intrusion, therefore, I'm going to suppress the evidence.

Accordingly, the court dismissed the indictments.

The State appealed to the Court of Criminal Appeals. Addressing defendant Winsett's motion to suppress, the appellate court first acknowledged that "the evidence in the burn pile, security cameras, and unidentified noises coming from inside the house may have created exigent circumstances for officers to cause forced entry into the house" but concluded that any exigency that prompted the forced entry no longer existed upon the officers' discovery of the source of the suspicious noise. *State v. Stanfield*, No. W2015-02503-CCA-R3-CD, 2017 WL 1205952, at *6 (Tenn. Crim. App. Mar. 31, 2017), *perm. app. granted* (Tenn. Jul. 19, 2017). The appellate court further stated that "[o]nce the house was 'cleared,' the subsequent extensive search without the parolee's presence did not further any legitimate law enforcement concerns." *Id.* The court highlighted the State's failure to address reasonable suspicion for the search or the reliability of the confidential information. *Id.* at *5.

With regard to Janet's motion, the Court of Criminal Appeals determined that with regard to a search of a *probationer's* residence, a warrantless search is permissible if reasonable suspicion for the search exists. *Id.* at *6 (citations omitted). The intermediate appellate court concluded that the police officers lacked reasonable suspicion as to Janet because they were unaware of her status as a probationer and lacked any evidence of her engaging in criminal activity. *Id.* at *6-7. The court concluded that "the subsequent

- 6 -

traffic stop and search of Janet's person was too attenuated from the search of the house" and that the evidence seized in the stop was properly suppressed. *Id.* at \*7.

Finally, as to Justin's motion, the Court of Criminal Appeals rejected the State's "common authority" argument and opined that because the State failed to establish that either of the other occupants had common authority over Justin's bedroom, despite the fact that the door was open, the evidence against Justin was properly suppressed. *Id.*

We granted the State's application for permission to appeal in this case to consider, *inter alia*, the expectations of privacy enjoyed by an individual granted supervised release from incarceration ("a parolee," i.e. Tony Winsett); an individual granted alternative sentencing ("a probationer," i.e. Janet Stanfield); and a private citizen residing with both a parolee and a probationer (i.e. Justin Stanfield). Necessary to our discussion is an analysis of how one's expectation of privacy is impacted when he or she either cohabitates with (in the same bedroom) or resides in the same dwelling with a person or persons who enjoy a lesser expectation of privacy due to legal status.

## II. Standard of Review

On appeal from a ruling on a motion to suppress, we will uphold the trial court's findings of fact unless the evidence preponderates against those findings. *State v. Hawkins*, 519 S.W.3d 1, 32 (Tenn. 2017) (citing *State v. Bell*, 429 S.W.3d 524, 528 (Tenn. 2014)); *State v. Climer*, 400 S.W.3d 537, 556 (Tenn. 2013); *State v. Turner*, 297 S.W.3d 155, 160 (Tenn. 2009); *State v. Day*, 263 S.W.3d 891, 900 (Tenn. 2008); *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). "'Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact.'" *Hawkins*, 519 S.W.3d at 32 (quoting *Odom*, 928 S.W.2d at 23). The party prevailing in the trial court on a motion to suppress "'is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence.'" *Turner*, 297 S.W.3d at 160 (quoting *Odom*, 928 S.W.2d at 23). We review the trial court's application of the law to the facts de novo with no presumption of correctness. *Hawkins*, 519 S.W.3d at 32-33 (citing *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001)); *Turner*, 297 S.W.3d at 160 (citations omitted).

## III. Analysis

### A. *The Fourth Amendment*

The Fourth Amendment to the United States Constitution guarantees that "'[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . .'" *State v. Christensen*, 517 S.W.3d 60, 68 (Tenn. 2017) (quoting U.S. Const. amend. IV); *State v. McCormick*, 494 S.W.3d 673, 678 (Tenn. 2016). Determining whether a particular search is "unreasonable" and therefore a violation of the rights guaranteed by the Fourth Amendment "'depends upon all of the circumstances surrounding the search . . . and the nature of the search . . . itself.'" *Turner*, 297 S.W.3d at 160 (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985)). "'The purpose of the prohibition against unreasonable searches and seizures under the Fourth Amendment is to "safeguard the privacy and security of individuals against arbitrary invasions [by] government[al] officials."'" *Christensen*, 517 S.W.3d at 68 (quoting *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997) (quoting *Camara v. Mun. Court*, 387 U.S. 523, 528 (1967)); *see also State v. Talley*, 307 S.W.3d 723, 729 (Tenn. 2010); *State v. Keith*, 978 S.W.2d 861, 865 (Tenn. 1998).

Similarly, article I, section 7 of the Tennessee Constitution provides that "'the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures.'" *Christensen*, 517 S.W.3d at 68 (quoting Tenn. Const. art. I, § 7). The search and seizure provisions of the federal and state constitutions are "'identical in intent and purpose.'" *Id.* (quoting *Sneed v. State*, 221 Tenn. 6, 423 S.W.2d 857, 860 (1968)). Under both constitutional guarantees, reasonableness is "the ultimate touchstone." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006); *McCormick*, 494 S.W.3d at 679. A search is presumptively reasonable when conducted on the basis of probable cause and with a warrant. *See McCormick*, 494 S.W.3d at 678-79. Warrantless searches and seizures are presumptively unreasonable, even if the police possess probable cause for the search. *Id.* However, there are circumstances where the reasonableness standard of the Fourth Amendment and article I, section 7 requires neither probable cause nor a warrant. *See Samson v. California*, 547 U.S. 843, 846 (2006); *Turner*, 297 S.W.3d at 157. The search of a parolee—a person who has been convicted of a criminal offense and is serving a sentence involving release into the community—is one such circumstance. *Turner*, 297 S.W.3d at 157.

### B. *Warrantless Search of Tony Winsett's Residence (Parolee)*

In the matter before us, both the State and defendant Winsett rely on this Court's opinion in *State v. Turner*, 297 S.W.3d 155 (Tenn. 2009). In *Turner*, this Court considered, as a matter of first impression, the application of *Samson v. California* to Tennessee's jurisprudence regarding searches and seizures and held that "parolees who

are subject to a warrantless search condition may be searched without reasonable or individualized suspicion." *Turner*, 297 S.W.3d at 157. Therefore, we begin our analysis with *Turner*'s synopsis of the *Samson* opinion.

In *Samson*, a California law provided "that every prisoner eligible for release on state parole 'shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause.'" *Samson*, 547 U.S. at 846 (citation omitted). Relying on this statutory authorization, a police officer who encountered Samson on the street conducted a warrantless and suspicionless search of his person "based solely on [Samson's] status as a parolee." *Id.* at 846-47. The officer found "a cigarette box in [Samson's] left breast pocket. Inside the box he found a plastic baggie containing methamphetamine." *Id.* at 847. The officer seized the methamphetamine, and Samson was charged with possession. *Id.* The trial court denied his motion to suppress, finding that the search was reasonable, authorized by California law, and not "arbitrary or capricious." *Id.* A jury convicted Samson, and he received a seven-year sentence. *Id.* The California Court of Appeals affirmed the trial court's denial of Samson's motion to suppress, ruling that suspicionless searches of parolees are constitutionally reasonable so long as such searches are not "arbitrary, capricious or harassing." *Id.* The United States Supreme Court affirmed. *Id.*

In doing so, the United States Supreme Court considered "the totality of the circumstances." *Id.* at 848 (internal quotation marks omitted). The Court explained that this determination requires a balancing, "on the one hand, the degree to which [a search] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Id.* (internal quotation marks omitted). As for the degree of intrusion on the privacy of the Samson, a parolee, the Court explained that "parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment[;] . . . [t]he essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Samson*, 547 U.S. at 850 (internal quotation marks and citations omitted). As a result, the Court explained, "parolees . . . have severely diminished expectations of privacy by virtue of their status alone." *Id.* at 852.

Second, the Supreme Court found it "salient" that the California law requiring parolees to submit to warrantless, suspicionless searches by a parole officer or other peace officer "at any time," was "clearly expressed" to Samson. *Id.* (internal quotation marks and citations omitted). The Supreme Court pointed out that Samson "signed an

order submitting to the condition and thus was unambiguously aware of it." *Id.* (internal quotation marks omitted).

The Supreme Court balanced the diminished expectation of privacy a parolee has with the State's "'overwhelming interest'" in supervising parolees, "'[who] are more likely to commit future criminal offenses,'" and the State's interests in reducing recidivism and in promoting reintegration and positive citizenship. *Id.* at 853 (quoting *Pa. Bd. of Prob. & Parole*, 524 U.S. 357, 365 (2014)). The Supreme Court concluded that the State's substantial interests in supervising parolees "warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Id.* Accordingly, the Supreme Court upheld the warrantless, suspicionless search of Samson based on his parolee status alone. *Id.* at 857.

In *Turner*, this Court adopted the rationale and holding of *Samson*, stating:

> The [United States] Supreme Court has recognized that a criminal conviction subjects the offender to "a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service." *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). An offender's place on this continuum alters what is "reasonable" for purposes of the Fourth Amendment. For instance, incarcerated felons have *no* legitimate expectation of privacy in their prison cells. . . .
>
> . . . .
>
> On the continuum of possible punishments and reductions in freedoms, parolees occupy a place between incarcerated prisoners and probationers. Tennessee's statutory scheme defines parole as "the release of a [previously incarcerated] prisoner to the community . . . prior to the expiration of the prisoner's term subject to conditions . . . ." Tenn. Code Ann. § 40-28-102(5). "Release on parole is a privilege and not a right . . . ." *Id*. § 40-35-503(b) (2006); *see also id*. § 40-28-117(a) (2006). Under Tennessee's statutory scheme, persons released outside of prison walls on parole remain in the legal custody of the warden (or relevant penal supervisor) and are subject to all of the provisions upon which their parole is conditioned. *Id*. § 40-28-117(a); *Doyle v. Hampton*, 207 Tenn. 399, 340 S.W.2d 891, 893 (1960). Parolees remain under the confinement of their sentences while on parole. *Doyle*, 340 S.W.2d at 893.

*Turner*, 297 S.W.3d at 161-63 (alterations in original). The *Turner* Court described *Samson* as "a narrow exception to the usual rule: an exception which is hardly misguided given the minimal privacy interests retained by parolees and the government's 'overwhelming interest' in ensuring that a parolee complies with the conditions of her parole." *Id.* at 164.

As such, this Court in *Turner* expressly held that under both federal and Tennessee state constitutional protections,

> [a] parole condition requiring that the parolee submit to warrantless searches is reasonable in light of the parolee's significantly diminished privacy interests; the goals sought to be attained by early release; and society's legitimate interest in protecting itself against recidivism. We therefore adopt the reasoning of *Samson* and hold that the Tennessee Constitution permits a parolee to be searched without any reasonable or individualized suspicion where the parolee has agreed to warrantless searches by law enforcement officers.

*Id.* at 166 (footnote omitted).

By contrast, this Court held, the State's interests were substantial. *Turner*, 297 S.W.3d at 163 (quoting *Samson*, 547 U.S. at 853). The Court noted that

> "[the] State has an 'overwhelming interest' in supervising parolees because 'parolees . . . are more likely to commit future criminal offenses.' Similarly, this Court has repeatedly acknowledged that a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment."

*Id.* (quoting *Samson*, 547 U.S. at 853).

Applying *Turner* to the matter at hand, the search of defendant Winsett's residence was constitutionally reasonable, even though officers neither had a search warrant nor sought to obtain a warrant prior to searching defendant Winsett's residence, based upon Winsett's status as a parolee. Just as in *Samson* and *Turner*, as a condition of defendant Winsett's parole, Winsett signed a Parole Certificate stating, among other things that "I will agree to a search, without a warrant, of my person, vehicle, property, or place of

residence by any Probation/Parole officer or law enforcement officer, at any time without reasonable suspicion." His signature on the document clearly illustrates that defendant Winsett was "unambiguously" aware of the search condition contained in his parole agreement, and the officer conducting the search was aware of his status as a parolee. *See Samson*, 547 U.S. at 850. Thus, the search of defendant Winsett's residence was constitutionally reasonable based on his status as a parolee alone.

The Court of Criminal Appeals erred in concluding that once the officers entered the residence and determined that the source of the suspicious noise was due not to nefarious conduct but to a rambunctious canine, the exigency no longer existed, and the officers should have halted. *Stanfield*, 2017 WL 1205952, at *6. This analysis ignores the salient circumstance that this defendant enjoyed a lessened expectation of privacy due to his parolee status. Moreover, the intermediate court's conclusion ignores the holdings of *Turner* and *Samson*, both of which authorized the warrantless search based upon Winsett's parolee status alone.[4]

We hasten to emphasize, however, that neither *Samson* nor *Turner* afford law enforcement unfettered and unreviewable discretion. As this Court emphasized in *Turner*, a warrantless and suspicionless search of a parolee could be deemed unreasonable and therefore unconstitutional under circumstances indicating that the search was conducted for reasons other than valid law enforcement concerns, for instance, "a pattern of repetitive searches while the parolee is at work or asleep," "[s]earches intended to cause the parolee some harm," or a "search conducted out of personal animosity." *Turner*, 297 S.W.3d at 167. "A suspicionless search of a parolee would also be constitutionally suspect if the law enforcement officer conducted it without knowing that the person searched was a parolee subject to warrantless and suspicionless searches." *Id*. at 166-67. This Court recognized that "there may be other situations where a warrantless, suspicionless search of a parolee is unreasonable." *Id*. at 167. Accordingly, as a procedural safeguard, this Court held that "the totality of the circumstances surrounding a warrantless, suspicionless search of a parolee must be examined to determine whether the search is constitutionally unreasonable." *Id*. We noted, however, that "[a] suspicionless search of a parolee subject to a warrantless search

---

[4] For this same reason, the intermediate appellate court erred by criticizing the State for failing to address reasonable suspicion in its brief. Because *Turner* and *Samson* authorized a warrantless, suspicionless search of defendant Winsett's residence based on his status alone, the State had no obligation to brief the question of reasonable suspicion. *Stanfield*, 2017 WL 1205952, at *5.

condition, and which is conducted out of valid law enforcement concerns, is not unreasonable." *Id*.

Pursuant to *Turner*, we must now engage in a review of the totality of the circumstances, "of which [the] [d]efendant's status as a parolee and [his] agreement to the warrantless search condition are salient circumstances, and determine whether the search of [the] [d]efendant's residence was reasonable." *Id*. at 168 (footnote omitted).

Here, the record lacks evidence establishing that the search was constitutionally unreasonable. Officer Yates was aware of Winsett's parole status and was conducting a search based upon what he deemed to be credible information[5] to determine whether Winsett was engaging in drug activity—a valid law enforcement concern.[6] The officers arrived at the home in the middle of the afternoon, not during the night. The police had been to the residence twice before and had not entered when no one answered their knock. On the day in question, the police knocked for ten to twenty minutes and entered only after hearing suspicious noises from inside the dwelling that could have been attributable to destruction of evidence. Even then, they entered the residence in a manner that minimized property damage. There is no evidence in the record that suggests that Officer Yates was acting in an arbitrary manner. The record is devoid of any proof that Officer Yates sought to cause Winsett any harm, that Officer Yates acted out of personal animosity, or that the search was one of a pattern of repetitive searches while Winsett was at work or asleep.[7]

---

[5] In conducting its totality of the circumstances analysis, the Court of Criminal Appeals concluded that the search was unreasonable because Officer Yates based his search in part on an unidentified informant whose reliability and basis of knowledge had not been established and because the "exigent circumstances" the officers believed to exist based on the noises they heard while outside of the house were subsequently extinguished. *Stanfield*, 2017 WL 1205952, at *6. In light of *Turner*, the Court of Criminal Appeals erred in concluding that these factors were determinative.

[6] In its Rule 11 application, the State asks this Court to address the parameters of what would constitute a "legitimate law enforcement concern" under *Turner*. Resolution of this case does not require us to set forth an over-arching definition of that term. Suffice it to say that because this case clearly involves detection and prosecution of drug-related offenses, officers were acting pursuant to a legitimate law enforcement concern.

[7] In this case, defendant Winsett was not home at the time of the search, a fact upon which the trial court seemingly relied. Our research has yielded no authority for the proposition that a search of a parolee's residence is *per se* unreasonable if the parolee is not present at the time. To the contrary, at least one federal circuit court has concluded that a parole search conducted outside the presence of the parolee was, indeed, *not* unreasonable. *See, e.g., United States v. Cantley*, 130 F.3d 1371, 1376 (10th Cir. 1997) (rejecting parolee's argument that parole officer's search of his residence became *unreasonable* once the parole officer determined that the parolee was not at home). In its brief, the State emphasizes

Accordingly, considering the totality of the circumstances, the search of defendant Winsett's bedroom was clearly permissible. Based upon the *Turner* and *Samson* decisions, we conclude that because Officer Yates knew about defendant Winsett's parole status and because Winsett was aware that he was subject to warrantless and suspicionless searches at any time as a condition of his parole, officers did not err in searching certain areas of defendant Winsett's residence. Absent any evidence whatsoever that the search in question was unreasonable in a constitutional sense and keeping in mind the State's significant interests in combating recidivism and thwarting illegal drug activity by parolees, we hold that evidence seized during the warrantless search of defendant Winsett's residence was admissible against him and that the trial court erred in suppressing the evidence against defendant Winsett. We reverse the trial court's decision granting defendant Winsett's motion to suppress and the Court of Criminal Appeals' opinion affirming the same.

C. *Warrantless Search of Janet Stanfield's Possessions in Shared Bedroom (Probationer)*

We next address the trial court's decision to grant defendant Janet Stanfield's motion to suppress. As stated *supra*, defendants Winsett and Janet Stanfield shared a bedroom within the residence; as such, their legal statuses intertwine. Therefore, it is necessary to consider whether the doctrine of common authority applies to the search of belongings that were found within the bedroom but that clearly belonged to Janet.

In *State v. Bartram*, 925 S.W.2d 227 (Tenn. 1996), this Court recognized the United States Supreme Court's decision regarding common authority as set forth in *United States v. Matlock*, 415 U.S. 164, 171 (1974), stating, "[T]he consent of one who possesses common authority over premises or effects is valid as against the absent, non-consenting person with whom that authority is shared." *Bartram*, 925 S.W.2d 230-231 (citing *Matlock*, 415 U.S. at 171).

> The [United States Supreme C]ourt defined common authority as the "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and

that it is not seeking to establish a rule that would permit law enforcement to enter parolee residences in the absence of exigent circumstances, such as those present in this case. Thus, we confine our analysis to the facts of this case.

that the others have assumed the risk that one of their number might permit the common area to be searched."

*Id.* at 231 (quoting *Matlock*, 415 U.S. at 171, n.7).[8] Following the *Matlock* decision, Tennessee applied the common authority test in a case involving spousal consent. *State v. Pritchett*, 621 S.W.2d 127, 134 (Tenn. 1981). "In *Pritchett*, this Court stated, '[A] wife can consent to the search of her home, and if objects are found [that] would incriminate her husband, such objects are admissible in evidence.'" *Bartram*, 925 S.W.2d at 231 (quoting *Pritchett*, 621 S.W.2d at 134); *see also Talley*, 307 S.W.3d at 734) (holding that a live-in girlfriend can consent to search based on the doctrine of common authority).

Many jurisdictions acknowledge that if a parolee is sharing a residence with someone else, a parole search may nonetheless extend to all parts of the premises to which the parolee has common authority:

> A warrantless search of a parolee may result in an invasion of privacy, at least to some extent, for those living with the parolee. If the Fourth Amendment rights of nonparolees living with parolees were not reduced, a parolee could avoid all warrantless parole searches by living with a nonparolee and asserting the nonparolee's constitutional rights, and thus emasculate one significant feature of the parole system.

5 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 10.10(d), at 556-57 n.138 (5th ed. 2012)
 (citing *State v. Johnson*, 748 P.2d 1069, 1073 (Utah 1987) (*abrogated on other grounds*) and (citing *United States v. Cantley*, 130 F.3d 1371, 1376 (10th Cir. 1997) (concluding that parole search was lawful as to parolee's wife because officers only searched common areas and the one bedroom that was identified as belonging to Cantley)); *see United States v. Davis*, 932 F.2d 752, 758-59 (9th Cir. 1991) (rejecting co-defendant's argument that officers exceeded scope of warrantless search of probationer's residence when they searched a safe that was under the apparent joint control of probationer and co-

---

[8] Later, the United States Supreme Court limited *Matlock* by holding that "if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out." *Georgia v. Randolph*, 547 U.S. 103, 121 (2006). Here, neither defendant Winsett nor Janet Stanfield was present, so we need not consider how, if at all, *Georgia v. Randolph* applies to parole searches.

defendant). "Persons who live with [parolees] cannot reasonably expect privacy in areas of a residence that they share with [parolees]."[9] *People v. Pleasant*, 19 Cal.Rptr.3d 796, 798 (Cal. Ct. App. 2004). As such, "a warrantless search, justified by a [parole] search condition, may extend to common areas, shared by [nonparolees], over which the [parolee] has 'common authority.'" *People v. Smith*, 116 Cal.Rptr.2d 694, 697 (Cal. Ct. App. 2002) (quoting *Matlock*, 415 U.S. at 171); *see also State v. Yule*, 905 So.2d 251, 264 (Fla. Dist. Ct. App. 2005) (A nonparolee's "diminished expectation of privacy extends to those portions of the shared residence over which the [parolee] and [nonparolee] have joint dominion.").

Tennessee has not yet considered the doctrine of common authority as it relates to parole searches.[10] However, adoption of the doctrine in this context seems to be a logical extension thereof. Applying the doctrine of common authority to parole searches also furthers important policy considerations. The State has an "overwhelming interest" in supervising parolees and "reducing recidivism." *Turner*, 297 S.W.3d at 163 (quoting *Samson*, 547 U.S. at 853). The privacy intrusion upon an individual sharing a bedroom (i.e., an area with common authority) with a parolee is not so invasive that it would not be tolerated under the Fourth Amendment. *See id.*; *see also State v. Bursch*, 905 N.W.2d 884, 890 (Minn. Ct. App. 2017) ("Non-probationers who choose to live with probationers 'assume the risk that they too will have diminished Fourth Amendment rights in areas shared with the probationer.'") (quoting *State v. Adams*, 788 N.W.2d 619, 623 (N.D. 2010)); *State v. West*, 517 N.W.2d 482, 491-92 (Wis. 1994). Therefore, we expressly adopt the doctrine of common authority as it applies to parole searches of areas of a residence over which a parolee has common authority.

Nevertheless, the government bears the burden of proving the common authority doctrine applies. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *West*, 517 N.W.2d at 491. The State has satisfied its burden in this case. It is without question that Tony Winsett and Janet Stanfield shared a bedroom in the residence.[11] Thus, by virtue of the

---

[9] As we explained *supra*, parole and probation fall along different points on the continuum of possible punishments. However, both statuses involve supervised release into the community as opposed to incarceration. While these terms are not interchangeable, for the purpose of our analysis, we find reference to cases involving probation instructive on this issue.

[10] While some case law suggests that parole searches are akin to consent searches, other jurisdictions disagree on whether a parole search is, indeed, a consent search because of the involuntary and mandatory nature of the search. Our decision does not require consideration of that precise issue.

[11] As part of the rules of community corrections, Janet signed a form requiring that she comply with law enforcement requests to conduct a search of her person and all areas of her residence "to control

doctrine of common authority, law enforcement officers did not err in searching and seizing all items of contraband found in the shared bedroom. The trial court, therefore, erred in suppressing the evidence against Janet Stanfield.

To that end, having found that the search of the residence was constitutionally reasonable as to Janet Stanfield, her argument that evidence seized from her person during the ensuing stop of defendant Winsett's automobile should also be suppressed as fruit of the poisonous tree is without merit as well. We reverse the trial court's granting of defendant Janet Stanfield's motion to suppress and the Court of Criminal Appeals' decision affirming the same.

### D. *Warrantless Search of Justin Stanfield's Room*
### *(Private Citizen)*

More problematic, however, was the warrantless search of Justin Stanfield's room and the resulting seizure of marijuana. The extent of the privacy interest of an individual who is unencumbered by a conditional release status but who resides with an individual subject to such restrictions is a matter of first impression in Tennessee. The State urges us to apply the common authority doctrine and uphold the officers' search of Justin Stanfield's bedroom.

As suggested by the record, the searches of the bedrooms occurred simultaneously but only after the officers determined ownership of each bedroom. Officer Hall, who did not testify at the suppression hearing,[12] continued to perform a thorough search of Justin Stanfield's room even after establishing to whom it belonged. He seized a pickle jar containing marijuana from a closed wooden television stand in Justin's bedroom. The State relies on Justin's open bedroom door and the lack of evidence that he intended to restrict access to the room, such as a lock on the door or testimony that he regularly kept the door closed.

---

contraband or locate missing or stolen property." Given our conclusion that the search of the bedroom was constitutionally reasonable based on the common authority doctrine, we need not and do not determine whether the conditions of community corrections to which Janet Stanfield agreed also would have supported a suspicionless, warrantless search of her residence.

[12] We must note that due to the particular facts of this case, it would have been beneficial for the trial court and the appellate courts if Officer Hall had testified at the suppression hearing to clarify some of the intricacies of the search.

Assuming the search was valid as to defendant Winsett, as we have so held, the question becomes whether Justin's bedroom fell within the purview of the parole search. *See, e.g.,* 67A C.J.S. Pardon & Parole § 70 (2018) (noting that "a parole search may extend to all parts of the premises to which the parolee has common authority even over the objections of a non[-] parolee living on those premises"). There is no evidence indicating whether Justin did or did not manifest an expectation of exclusivity, but the State argues that the open door refutes the notion of exclusivity.[13]

As stated *supra*, "The 'rights assured by the Fourth Amendment are personal rights.'" *Talley*, 307 S.W.3d at 729 (quoting *Simmons*, 390 U.S. at 389). Accordingly, we focus on the extent of Justin Stanfield's constitutional rights. *See id.* (citing *Rakas*, 439 U.S. at 139). We view the evidence in the light most favorable to Justin as the prevailing party at the hearing on the motion to suppress, together with all reasonable and legitimate inferences therefrom. *Turner*, 297 S.W.3d at 160. In addition, "evidence obtained as a result of a warrantless search or seizure 'is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement.'" *Talley*, 307 S.W.3d at 729-30 (quoting *Yeargan*, 958 S.W.2d at 629). The State, of course, "bears the burden of proof when a search or seizure is conducted without a warrant." *State v. Berrios*, 235 S.W.3d 99, 105 (Tenn. 2007) (citing *Yeargan*, 958 S.W.2d at 629).

As noted above, the government also bears the burden of proving the common authority doctrine applies. *Rodriguez*, 497 U.S. at 181. As the Tenth Circuit Court of Appeals has explained, proof of common authority requires "persuasive evidence of both shared use *and* joint access or control." *United States v. Salinas-Cano*, 959 F.2d 861, 864 (10th Cir. 1992). The State cannot meet its burden

> if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry. If the agents do not learn enough, if the circumstances make it unclear whether the property about to be searched is subject to "mutual use" by the [parolee] . . . , "then warrantless entry is unlawful without further inquiry."

---

[13] We also note the dearth of evidence of whether any of Winsett's or Janet Stanfield's possessions were found in Justin's room. Had any of their possessions been found in Justin's room, this would have supported the application of the doctrine of common authority as to the search of Justin's room.

- 18 -

*Id.* (quoting *United States v. Whitfield*, 939 F.2d 1071, 1075 (D. C. Cir. 1991) (quoting *Rodriguez*, 497 U.S. at 188-89)).  The State has not satisfied its burden in this case.

Justin Stanfield, the twenty-one-year-old son of Janet Stanfield, maintained a separate bedroom in the residence he shared with the co-defendants.  Officer Yates testified that the door was open.  Although common sense would dictate that Justin was aware that his mother was on probation and that defendant Winsett was on parole, the State presented no evidence that Justin was aware of the search conditions of their release from confinement or that those conditions could possibly implicate his own constitutional protections.  "[W]idely shared social expectations" would not support defendant Winsett's or Janet Stanfield's rummaging through cabinets or drawers in Justin's bedroom. *Georgia v. Randolph*, 547 U.S. 103, 111 (2006).  Moreover, although Justin is the son of defendant Janet Stanfield, this is not a "family" situation; Justin was not a child who resided with his mother and father or mother and step-father.  Rather, the living arrangement is more closely akin to three adult roommates sharing a residence.  In such arrangements, roommates typically do not have authority to rummage through the personal belongings of another roommate.

We also emphasize that Officer Yates had observed Justin's vehicle at the residence on several occasions and testified that he had reason to believe that Justin lived there.  Ergo, Officer Yates knew that one of the three bedrooms was occupied by defendants Winsett and Janet Stanfield and another one was occupied by Justin Stanfield.  The presence of women's clothing in the shared bedroom immediately resolved the question of who inhabited each bedroom.  However, upon observing that a third bedroom was uninhabitable due to clutter, officers did not search inside that bedroom; it stands to reason that the third bedroom would have been an excellent place to hide illegal substances or objects and could have been the source of the odor of marijuana.  Rather, the officers chose to search the bedroom of Justin Stanfield.  These two facts seem irreconcilable from a Fourth Amendment perspective.

While other jurisdictions accept that persons who are not subject to conditional release status and choose to reside with parolees or probationers assume the risk that they too will have diminished constitutional rights in areas that are shared by all residents, *State v. Adams*, 788 N.W.2d 619, 623 (N.D. 2010), it does not follow that a co-occupant has *no* privacy expectation in his own bedroom and furniture simply because a parolee is "physically capable" of reaching said areas, *Milton v. State*, 879 P.2d 1031, 1036 (Alaska Ct. App. 1994); *see also Bursch*, 905 N.W.2d at 891 (holding that those who live with a parolee have normal expectations of privacy in areas under their *exclusive* control "so long as there is no basis for [law enforcement] to reasonably believe the [parolee] has

authority over those areas" (quoting *People v. Robles*, 3 P.3d 311, 317 (Cal. 2000)). These cases held that "[l]aw enforcement may not search areas that are under the non-[parolee's] exclusive control, like the non-[parolee's] bedroom, just because they live with a parolee." *Bursch* 905 N.W.2d at 892; *see also Robles*, 3 P.3d at 317 ("That persons under the same roof may legitimately harbor differing expectations of privacy is consistent with the principle that one's ability to claim the protection of the Fourth Amendment depends upon the reasonableness of his or her individual expectations.").

> The risk to non[-parolees'] Fourth Amendment rights demands that, when officers conduct a [parole] search where a [parolee] lives with a non[-parolee], the facts available to the officers must support a reasonable belief that the probationer has at least common authority over the area searched.

*State v. Davis*, 965 P.2d 525, 533 (Utah Ct. App. 1998); *see also People v. Burgener*, 714 P.2d 1251, 1269 (Cal. 1986) ("Inasmuch as authority to search the residence of a parolee [or probationer] extends to areas which are jointly controlled with other occupants of the residence, the authority to search these premises necessarily portends a massive intrusion on the privacy interests of third persons solely because they reside with a parolee [or probationer]." (citation omitted)).

While the warrantless entry into the shared residence did not violate Justin's Fourth Amendment rights, he is not completely divested of his constitutional rights simply by residing with a parolee. Even when faced with objections by non-parolees, officers may still enter a residence in this situation but may only search the areas that are under the control of the parolee, such as the parolee's bedroom or other areas over which the parolee shares common control or authority. Law enforcement officers may not search areas that are under the non-parolee's exclusive control, such as the non-parolee's bedroom, simply because the non-parolee resides with someone on conditional release status.

To give clear guidance to law enforcement officers, we emphasize that law enforcement is only permitted to conduct a search of a certain area of a parolee's residence if "the facts available to the officers . . . support a reasonable belief that the [parolee] has at least common authority over the area searched." *Davis*, 965 P.2d at 533. By so holding, this Court is balancing the State's interests in enforcing the terms of parole by not allowing parolees to create a "loophole" by residing with a non-parolee while simultaneously respecting the Fourth Amendment rights of an unencumbered citizen by not allowing law enforcement officers unfettered access to all areas inside the parolee's residence.

- 20 -

In expressly adopting the doctrine of common authority as applied to parole searches, we also adopt the limitations thereof. Under these circumstances and the unique facts presented by this case, we conclude that rather than *permitting* the search of Justin's bedroom, as asserted by the State, the doctrine of common authority applies to *limit* law enforcement's search of an area held exclusively by an individual with no conditional release status. To hold otherwise would be to grant law enforcement *carte blanche* to conduct full searches of any residence in which a parolee is living, regardless of the person who is actual target of the search, thus obviating the warrant requirement in such situations. Absent a showing that it was reasonable for law enforcement officers to believe that defendant Winsett had shared authority of Justin's bedroom, Justin held a full expectation of privacy in his bedroom that was not diminished by the conditional release status of his co-residents. There is no evidence in the record to indicate that law enforcement reasonably believed that defendant Winsett exerted any authority over Justin's bedroom; as such, Officer Yates and Agent Hall were not allowed to search his bedroom merely because they were conducting a parole search of the residence.

Because the parole search of the residence was proper, it was therefore permissible for officers to enter Justin's bedroom to clear it for officer safety. Upon detecting the odor of marijuana in the residence, officers had probable cause to obtain a warrant to search further, but they did not. At this point, Justin's privacy interests were paramount to the promotion of governmental interests. *See Turner*, 297 S.W.3d at 160 (stating that "the permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests") (citation and internal quotation marks omitted).

These limitations also further the State's interests from a policy perspective. In addition to combating recidivism among parolees, the State also has an interest in promoting a parolee's or probationer's reintegration into society. *Turner*, 297 S.W.3d at 163 (quoting *Samson*, 547 U.S. at 853). It would be counterintuitive to effectively strip all constitutional rights from an individual who has no restraint on his legal status by virtue of his sharing a residence with a parolee. Should circumstances exist that call into question the legality of a non-parolee's actions, such as the odor of marijuana in this case, officers should follow the appropriate channels and obtain a search warrant for the exclusive bedroom of the third party. *See State v. Velasquez*, 672 P.2d 1254, 1260 n.3 (Utah 1983) ("Caution would certainly suggest that a warrant be obtained if the rights of non-parolees might be affected [by a parole search].").

Having cleared the residence, there was no longer an exigency as it related to Justin Stanfield's bedroom. The parole search was valid as it pertained to the common areas of the residence and defendants Winsett/Stanfield's bedroom, but it did not extend to Justin Stanfield's private quarters. When the officers entered and walked toward the bedrooms, it was immediately apparent that one bedroom was uninhabitable, one bedroom contained both men's and women's clothing, and the remaining bedroom, by process of elimination, belonged to Justin. A search of Justin's bedroom was not necessary to determine ownership, yet officers opened a nightstand drawer and located Justin's identification. Armed with this additional knowledge, Agent Hall nonetheless continued to perform a thorough search of Justin's bedroom, opening cabinets and drawers. Viewing the evidence in the light most favorable to the defendant, we conclude that the State has failed to carry its burden of proving that a thorough search of Justin's room was permissible under these circumstances.

## CONCLUSION

We hold that because of the sweeping parole conditions to which defendant Winsett was subject and of which defendant Winsett and Officer Yates were aware, the parole search of portions of defendant Winsett's residence was constitutionally permissible. We further hold that considering the totality of the circumstances presented by this case, defendant Winsett's absence during the search did not rise to the level of rendering the search constitutionally unreasonable. Because defendants Winsett and Janet Stanfield shared a bedroom, the search of her personal belongings located within that bedroom was proper pursuant to the doctrine of common authority and notwithstanding any conditions of her probation. The resulting stop and search of the vehicle in which defendants Winsett and Janet Stanfield were traveling was not so attenuated as to necessitate suppression of the evidence seized therein. All evidence against these two defendants is admissible, and the trial court erred in suppressing the same.

Despite having a reduced expectation of privacy in the common areas shared by defendants Winsett and Janet Stanfield, defendant Justin Stanfield enjoyed a reasonable expectation of privacy within his private bedroom, and absent a warrant or other exception to the warrant requirement, the search of his bedroom was improper, and all evidence against him was properly suppressed.

Therefore, we reverse the Court of Criminal Appeals' decision to the extent that it affirmed the granting of defendants Winsett's and Janet Stanfield's motions to suppress,

and we affirm the opinion as to the court's upholding Justin's motion to suppress.  We remand this cause to the trial court for proceedings consistent with this opinion.

Costs of this appeal are taxed to the State.

_____
ROGER A. PAGE, JUSTICE