IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
April 4, 2019 Session

## STATE OF TENNESSEE v. ANGELA CARRIE PAYTON HAMM and DAVID LEE HAMM

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Obion County**
**No. CC-16-CR-15       Jeff Parham, Judge**

———————————————————

**No. W2016-01282-SC-R11-CD**

———————————————————

SHARON G. LEE, J., dissenting.

One afternoon in November 2015, while David and Angela Hamm were not at home, four law enforcement officers entered and conducted a search of their home. The officers had neither a warrant nor reasonable suspicion of criminal activity. Ms. Hamm was on probation; the officers used her probationary status to justify the intrusive home search. The majority's decision to uphold this unreasonable search deprives Ms. Hamm and her husband of their rights to be free from unreasonable searches under the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution. The majority's decision also casts a cloud over the lives of more than 65,000 Tennessee probationers[1] and thousands of citizens living with probationers, all of whom are at risk of having their homes searched by law enforcement lacking reasonable suspicion of criminal activity.

Law enforcement should have, at the least, a reasonable suspicion of criminal activity before conducting a warrantless search of a probationer's home. The majority bases its ruling on the faulty premise that probationers and parolees should be treated the same. But they are not the same.

---

[1] In Tennessee, there are 57,832 probationers and 7,709 offenders in the Community Corrections program as of June 30, 2018. Tenn. Dep't of Correction, Annual Report (FY 2018), *available at* https://www.tn.gov/content/dam/tn/correction/documents/AnnualReport2018.pdf.

All parolees have committed felonies. Yet some probationers have committed only misdemeanors.[2] Trial courts carefully screen offenders before deciding whether or not to grant probation, considering the circumstances of the offense; the offender's criminal record, background, social history, physical and mental condition; and the deterrent effect on the offender. *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002); *see also State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). Trial courts also examine the offenders' potential for rehabilitation or treatment. *Souder*, 105 S.W.3d at 607 (citing Tenn. Code Ann. § 40-35-103(5)). Trial courts may deny probation to protect society from offenders with a history of criminal conduct, to avoid depreciating the seriousness of the offense, to deter others likely to commit similar offenses, or where measures less restrictive than confinement have not succeeded. Tenn. Code Ann. § 40-35-103(1) (2014).

Thus probationers, unlike parolees, have generally committed less serious crimes,[3] receive shorter sentences,[4] have few or no previous convictions,[5] are less likely to reoffend,[6] and are less of a threat to the public.[7] Probationers are entitled to all the constitutional rights that flow from the degree of liberty that comes with probation rather

---

[2] The majority notes that its decision concerns only a felon who is on probation. Yet this should offer no solace to misdemeanants because the rationale and broad language used by the majority make no distinction between probationary felons and misdemeanants.

[3] Offenders convicted of certain offenses, including aggravated kidnapping, aggravated sexual battery, statutory rape by an authority figure, aggravated child abuse and neglect, and sexual exploitation of a minor, are not eligible for probation. Tenn. Code Ann. § 40-35-303(a) (2014).

[4] An offender may be granted probation only if the sentence imposed is ten years or less. *Id.*

[5] *See id*. § 40-35-103(1)(A) (When imposing a sentence involving confinement, a court should consider whether "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct.").

[6] *See id*. § 40-35-103(5) ("The potential or lack of potential for the rehabilitation . . . of the defendant should be considered in determining the sentence alternative or length of a term to be imposed.").

[7] *See id*. § 40-35-103(1)(A). A trial court's decision to grant probation implicitly signals the trial court's assessment that the offender poses no significant threat to society. Sean P. Dawson, *Castles Made of Sand: The Disappearing Fourth Amendment Rights of Probationers and Parolees*, 79 U. Pitt. L. Rev. 285, 300 (2017).

than incarceration.[8] The majority's blanket approval of suspicionless searches of probationers is disproportionate and fails to reflect the nature of the crimes committed.[9]

By lumping probationers in with parolees, the majority ignores the well-established prisoner-parolee-probationer continuum relied on by courts. This Court and the United States Supreme Court have reasoned that probationers and parolees should be treated differently. In *State v. Turner*, 297 S.W.3d 155, 163 (Tenn. 2009) and *State v. Stanfield*, 554 S.W.3d 1, 9–10 (Tenn. 2018), a majority of this Court acknowledged that probationers have a greater expectation of privacy and less need for supervision than parolees.[10]

In *Turner*, the majority held that law enforcement may, without reasonable suspicion, search parolees who are subject to a warrantless search parole condition. 297 S.W.3d at 167. The majority noted that offenders are subject to a continuum of possible punishments based on their criminal conviction. *Id.* at 161 (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987)). On this continuum, the punishment for offenders can range from solitary confinement to community service. The offender's place in the continuum determines the reasonableness of a search for Fourth Amendment purposes. An incarcerated felon has no expectation of privacy and a greater need for supervision, so prison officials can search the felon's cell without probable cause or reasonable suspicion. A probationer, who has a much greater expectation of privacy and a lesser need for supervision, is further along on the continuum. *Id.* A parolee falls somewhere between the incarcerated felon and the probationer on the continuum. *Id.* at 162.

In *Stanfield*, the majority expanded the holding in *Turner*, allowing law enforcement to search a parolee's home with neither a warrant nor reasonable suspicion, based on his status as a parolee. 554 S.W.3d at 4. As in *Turner*, the *Stanfield* majority referenced the difference between parolees and probationers, explaining that "'parolees

---

[8] *See* Roni A. Elias, *Fourth Amendment Limits on Warrantless Searches of Probationers' Homes*, 25 Widener L.J. 13, 47 (2016); *see also State v. Ballard*, 874 N.W.2d 61, 72 (N.D. 2016) (comparing constraints on a parolee's liberty with those imposed on a probationer).

[9] *See* Dawson, *supra*, at 308–09.

[10] I dissented in *Turner* and *Stanfield* because, in my view, a search of a parolee without reasonable suspicion violates a parolee's rights under Article I, section 7 of the Tennessee Constitution. Blanket approval of suspicionless searches precludes meaningful judicial oversight of law enforcement's power to search parolees. *Turner*, 297 S.W.3d at 174 (Lee, J., dissenting); *Stanfield*, 554 S.W.3d at 21 (Lee, J., dissenting). The search of a probationer without reasonable suspicion is more offensive than a suspicionless search of a parolee.

occupy a place between incarcerated prisoners and probationers'" on the continuum of possible limitations to freedoms. *Id.* at 10 (quoting *Turner*, 297 S.W.3d at 162).

The United States Supreme Court has also distinguished between parolees and probationers and relied on the continuum analysis. In *Griffin v. Wisconsin*, 483 U.S. 868, 872 (1987), the Court upheld a warrantless search of a probationer's home. A state regulation authorized probation officers to search a probationer's home without a warrant when the officers had reasonable grounds to believe that the home contained contraband or prohibited items. *Id.* at 870–71. The Court found that the special needs of the state's probation system made the warrant requirement impracticable and justified a lower "reasonable grounds" standard for the warrantless search of a probationer. *Id.* at 875–76. The *Griffin* Court reasoned that "[p]robation is simply one point . . . on a continuum of possible punishments" and that the "permissible degree [of impingement upon a probationer's privacy] is not unlimited." *Id.* at 874–75.

Next, in *United States v. Knights*, 534 U.S. 112, 122 (2001), the United States Supreme Court upheld a warrantless search of a probationer's home. The search was based on law enforcement's reasonable suspicion of criminal activity *and* on a probation condition allowing a search with neither a warrant nor reasonable cause.[11] In upholding the search, the Court departed from the special needs rationale in *Griffin* and examined whether the search was reasonable under the "general Fourth Amendment approach of examining the totality of the circumstances, with the probation search condition being a salient circumstance." *Id.* at 117–18 (internal quotation marks and citation omitted). The Court explained that "[t]he touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Id.* at 118–19 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)). Applying this test, the Court found that the probationer had a diminished reasonable expectation of privacy based on the search provision in the probation order. *Id.* at 119–20. The Court then observed that a probationer is more likely to violate the law than an ordinary citizen and has a greater incentive to hide criminal activities because of the chance of probation revocation and incarceration. *Id.* at 120. Thus, the government had reason to focus more on probationers than on ordinary citizens. *Id.* at 121.

After balancing these considerations, the Court held that law enforcement needed "*no more than* reasonable suspicion to conduct a search of this probationer's house." *Id.* at 120–21 (emphasis added). In a footnote, the Court in *Knights* explained that it was not deciding "whether the probation condition so diminished, or completely eliminated,

---

[11] Ms. Hamm's probation condition was not as broad, authorizing only warrantless searches.

- 4 -

Knights' reasonable expectation of privacy . . . that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment." *Id.* at 120 n.6. The warrantless search in *Knights* was supported by reasonable suspicion *and* the probation search condition, so the Court did not address the constitutionality of a suspicionless search based solely on a probation condition.

Five years later, in *Samson v. California*, 547 U.S. 843, 855–56 (2006), the Supreme Court upheld the suspicionless search of a parolee's home after weighing the parolee's significantly diminished expectation of privacy and the government's substantial interest in supervising the parolee. Contrasting the privacy interests of parolees with those of probationers, the Court noted that parolees have a lesser expectation of privacy than probationers because "parole is more akin to imprisonment than probation is to imprisonment." *Id.* at 850. Additionally, the State's interest in supervising parolees is overwhelming because parolees are more likely to commit additional criminal offenses and the State has an interest in reducing recidivism. *Id.* at 853–54. After applying the *Knights* balancing test, the Court determined that law enforcement could conduct a suspicionless search of a parolee. *Id.* at 857.

The upshot of *Turner*, *Stanfield*, *Griffin*, *Knights*, and *Samson* is that probationers and parolees are different. Unlike parolees, probationers have greater privacy expectations and the government has a lesser interest in supervising them. Thus, assuming that the Fourth Amendment allows law enforcement to search a parolee's home without reasonable suspicion, it makes sense to require law enforcement to have at least a reasonable suspicion of criminal activity before searching a probationer's home.

In addition, law enforcement searches that are not based on reasonable suspicion of criminal activity are at odds with the need for criminal justice reform recognized by our nation and our state. *See* Tenn. Exec. Order No. 6 (Mar. 5, 2019) (recognizing the state's duty to address educational, mental health, and substance abuse issues in support of offenders' "successful reentry into society" and establishing a Criminal Justice Reinvestment Task Force to develop recommendations for, among other things, revising sentencing guidelines and parole and probation standards); First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5224–25 (requiring grant applicants to provide "a plan for analysis of the statutory, regulatory, rules-based, and practice-based hurdles to reintegration of offenders into the community" and prioritizing grant applications that "best . . . review the process by which the applicant adjudicates violations of parole, probation, or supervision following release from prison, jail, or a juvenile facility"); *see also* The Pew Charitable Trusts, *Fact Sheet: 35 States Reform Criminal Justice Policies Through Justice Reinvestment* (July 2018) (summarizing the post-2007 "wave of

reforms" to sentencing and correction policies, including supervision laws that guide how parolees and probationers are monitored).

A search not based on suspicion hinders one of the primary goals of criminal justice reform—more rehabilitation and less incarceration. These intrusive searches also hamper the aims of probation—rehabilitating and reintegrating probationers into society. *See Knights*, 534 U.S. at 113 (2001). A probationer whose privacy is invaded by a suspicionless search is prone to resent law enforcement and lose trust in the Rule of Law. Probationers who believe they have been mistreated by law enforcement do not have a firm foundation on which to successfully rebuild their lives and become productive, law-abiding citizens. The majority suggests that probationers are protected from searches that are repetitive, disruptive, or harassing. Yet *any* illegal search invades our privacy, disrupts our lives, violates our constitutional rights, and is unacceptable.

Tennessee would not be alone in requiring reasonable suspicion to justify the warrantless search of a probationer; some other states require it. *See, e.g.*, *People v. Lampitok*, 798 N.E.2d 91, 105 (Ill. 2003) (finding that the warrantless search of a probationer's motel room would be constitutional if the police had reasonable suspicion of a probation violation); *Ballard*, 874 N.W.2d at 72 (quoting *Samson*, 547 U.S. at 850) (concluding that a suspicionless search of a probationer's home was constitutionally unreasonable based on a continuum in which "parole is more akin to imprisonment than probation"); *see also State v. Bennett*, 200 P.3d 455, 463 (Kan. 2009) (concluding that searches of probationers require reasonable suspicion because probationers have a greater expectation of privacy than parolees and, under Kansas law, parolees cannot be searched without reasonable suspicion); *Commonwealth v. LaFrance*, 525 N.E.2d 379, 382–83 (Mass. 1988) (explaining that the state constitution forbids probation condition allowing a warrantless search condition of a probationer's person or home unless a probation officer has at least reasonable suspicion that a search might produce evidence of wrongdoing); *Murry v. Commonwealth*, 762 S.E.2d 573, 580 (Va. 2014) (concluding that a probation condition authorizing a warrantless and suspicionless search by law enforcement of a probationer was unreasonable because the search was unnecessary to facilitate rehabilitation and protect the public); *State v. Cornell*, 146 A.3d 895, 910 (Vt. 2016) (emphasizing that warrantless searches of probationers must follow the state constitution's requirement of reasonable suspicion); *State v. Lucas*, 783 P.2d 121, 126 (Wash. Ct. App. 1989) (concluding that the state constitution requires a well-founded suspicion that a probation violation has occurred to justify a warrantless search of a probationer).

Ms. Hamm was subject to a probation condition that allowed law enforcement to search her home without a warrant, but the probation condition did not provide for a

suspicionless search. Law enforcement had no warrant and lacked reasonable suspicion that Ms. Hamm was engaging in criminal activity. Police officers decided to search the home where Ms. Hamm lived with her husband based on an unconfirmed tip from a criminal informant that there were some "heavy players" in the Glass community. The informant did not mention the Hamms by name. When an officer suggested Mr. Hamm's name, the informant nodded her head and smiled. A nod and a smile cannot justify a home search. The police also learned from another informant that there were people in the Glass community "doing it big." This unidentified informant's information was second-hand from another unidentified informant and its meaning unclear. The evidence does not preponderate against the trial court's conclusion that law enforcement did not have reasonable suspicion to search the home where Ms. Hamm lived. Mr. Hamm was collateral damage to the illegal search of Ms. Hamm's home. He was on neither parole nor probation. Mr. Hamm had to endure a home search because he chose to share a bedroom with his wife.

In sum, the majority's decision to uphold the suspicionless search of the Hamms' home violated the Hamms' federal and state constitutional rights to be free from unreasonable searches. The United States Supreme Court can undo the injustice of the majority's decision; let's hope it does.

In the interest of justice, I dissent.


_____

SHARON G. LEE, JUSTICE