IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 21, 2026

## GUY A. COBB v. STATE OF TENNESSEE

**Appeal from the Criminal Court for McMinn County**
No. 23-CR-152     Sandra Donaghy, Judge
_____

**No. E2024-01074-CCA-R3-PC**
_____

The Petitioner, Guy A. Cobb, appeals the McMinn County Criminal Court's denial of his post-conviction petition, seeking relief from his guilty plea to possession of fentanyl with intent to sell or deliver and the resulting three-year sentence. On appeal, he claims that he received the ineffective assistance of counsel. Based on our review, we affirm the post-conviction court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and STEVEN W. SWORD, JJ., joined.

Todd W. Gee, Cleveland, Tennessee, for the appellant, Guy A. Cobb.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Stephen Hatchett, District Attorney General; and Andrew J. Castle, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On January 9, 2023, the Petitioner pled guilty to one count of possession of a Schedule II drug, fentanyl, with intent to sell or deliver, a Class C felony. Pursuant to the plea agreement, the trial court sentenced him as a Range I, standard offender to three years in confinement, and the State dismissed a second count for possession of drug paraphernalia. The Petitioner committed the offense while on parole and was required to serve the three-year sentence consecutively to a previous eight-year sentence. *See* Tenn. R. Crim. P. 32(c)(2)(A)(i).

At the guilty plea hearing, the State gave the following factual account of the crime:

Your Honor, the State would put forth evidence that on July 13th of 2022, Detective Jason Roberts spoke with [the] manager at Taco Bell about individuals in that area appearing to -- or there and at the Days Inn being in the parking lot to conduct possible drug deals. On July 14th, Detective Roberts [began] surveillance, and he did observe a female walk from the Days Inn to the Taco Bell parking lot to meet with the black male. And the white female then walked back from the silver car to the Days Inn.

The Officer, Detective Roberts[,] was able to identify this subject as the [Petitioner] in this matter. And I would note that Detective Roberts was the Officer on the previous case. So, we both have familiarity, too, with him and then also his custodial status. And they left, Your Honor, it turns out that he had confirmed through dispatch that he did not have a valid license. But it turns out [the Petitioner] may have, in fact, had a valid license.

But then on the 15th Detective Roberts was again there at the Studio Lodge in that general area, and he did observe the same vehicle; and it being driven by the [Petitioner], and there being a female passenger as well. He did -- then did perform a -- encounter a stop with him concerning the driver's license, and to perform a Rule 8 search, the parole.

While he was speaking with -- with the [Petitioner], the [Petitioner] began pulling items from his pocket, and a plastic bag fell on the ground. This did contain .47 grams of the pinkish powder, and in addition, Your Honor, five more bags were found consistent with a resale of what the Officer, through his training and experience identified to be .97, 1.14 grams, .94, 1.03 grams, and one gram of the pinkish powder.

And the State would seek to elicit testimony, Your Honor, that fentanyl due to it's -- the strength of that subject is often times sold in points, which would be .1 grams. And so, that amount would certainly be consistent with possession with intent to sell or deliver. These events occurring in McMinn County, Your Honor.

After the State's account of the crime, the Petitioner stated that he disagreed with the State's facts. Trial counsel requested to speak with the Petitioner briefly off the record, and the trial court agreed. After talking with the Petitioner, trial counsel stated:

- 2 -

Judge, if I could put something on the record. Just to put voice to [the Petitioner's] concerns there. It turns out he did have a valid driver's license. He had a clearance letter from like a month earlier, June 13th, I believe, but I guess that wasn't in the system.

So, Detective Roberts says he ran his name, and saw he didn't have a valid driver's license -- that was one of the reasons he approached him. From watching the videos, he didn't block him in, though. He didn't turn on any blue lights, so there would be a real question as to whether there was an actual seizure, or whether it was a consensual encounter. But he knew he was on parole, so he was subject to a Rule 8 search, and that's what [led] us here.

[The Petitioner] and I've talked about that and I've advised him, I didn't think I saw a suppression issue there, because his parole -- status is a parolee. If he wasn't a parolee, we'd be in a different situation here. But he wanted me to clarify, and put on record that he did have a valid driver's license at the time. And he was trying to get himself back on the straight and narrow, after getting out and got his license, and everything; but then this happened, Judge.

So, I just wanted to put that on the record, Judge. But I do -- and I would concur with his statement that I believe he's doing this because he thinks it's in his best interest, Judge.

The trial court asked the Petitioner if he was pleading guilty because it was in his best interest to do so, and the Petitioner answered, "That's the only reason." The trial court accepted the Petitioner's guilty plea.

In November 2023, the Petitioner filed a timely pro se petition for post-conviction relief, claiming, in pertinent part, that he received the ineffective assistance of counsel. Specifically, the Petitioner asserted that trial counsel was ineffective for failing to file a motion to suppress because Detective Roberts unlawfully stopped him without probable cause and for advising him to plead guilty without challenging the unlawful stop. The post-conviction court appointed counsel (hereinafter "first post-conviction counsel"), and first post-conviction counsel filed an amended petition, claiming that trial counsel also was ineffective for advising the Petitioner to plead guilty before the Tennessee Bureau of Investigation ("TBI") Crime Laboratory completed its analysis of the substance dropped by the Petitioner.

The post-conviction court held an evidentiary hearing on March 11, 2024. During the hearing, trial counsel testified for the Petitioner that he was licensed to practice law in

April 2015 and that he worked in private practice from April 2015 to April 2018, when he began working for the public defender's office. He estimated that he handled twelve to forty drug cases per year.

Trial counsel testified that he began representing the Petitioner while the Petitioner's case was in general sessions court. The Petitioner was on parole for a prior felony conviction with an eight-year sentence and was facing three to six years for possessing fentanyl with intent to sell or deliver. The State's discovery materials included Detective Roberts's body camera video and the Petitioner's signed parole agreement, which allowed searches and seizures of parolees. The Petitioner was in confinement while his case was pending. Trial counsel met with him at least one time to discuss the discovery materials and talked with him about his options while his case was still in general sessions court. The Petitioner did not watch the body camera video, but trial counsel watched the video and would have played it for the Petitioner if he had asked to view it. Trial counsel said that he reviewed *State v. Stanfield*, 554 S.W.3d 1 (2018), in which our supreme court "laid out the standards for search and seizures for parole -- probationary paroles," and that he did not see a suppression issue in the Petitioner's case.

Trial counsel testified that he continued to represent the Petitioner when the case was bound over to criminal court and that the State made a three-year offer to serve in confinement. Trial counsel sent the Petitioner a letter in which trial counsel explained the State's proof in the discovery materials, including the body camera video. The letter also included a copy of Tennessee Rule of Criminal Procedure 32, which required that the Petitioner serve the sentence consecutively to the previous eight-year sentence, and a copy of the *Stanfield* opinion. Trial counsel said he told the Petitioner in the letter that "this was a fair offer, the best [the Petitioner] was going to get." Trial counsel also said in the letter that he did not see any suppression issues and advised the Petitioner to accept the offer. Trial counsel identified an unsigned copy of the letter, and first post-conviction counsel introduced the letter into evidence.

In the single-spaced, three-page letter, which was dated seven days before the Petitioner's guilty plea, trial counsel explained the holding in *Stanfield* and summarized the facts of the Petitioner's case. Trial counsel advised the Petitioner that based on the totality of the circumstances, which included the Petitioner's status as a parolee, Detective Roberts's knowledge that the Petitioner was a parolee, and Detective Roberts's observation of suspicious conduct by the Petitioner on July 14 and 15, 2022, trial counsel thought the trial court would find the Petitioner's stop lawful under *Stanfield*.

Trial counsel testified that he met with the Petitioner at the Petitioner's first criminal court hearing on January 9, 2023. The Petitioner had not received trial counsel's letter, so trial counsel "pulled up" the letter on his computer and discussed it with the Petitioner.

The Petitioner entered his guilty plea that same day. Trial counsel said the Petitioner was "wishy-washy" sometimes; however, on the day of the plea, the Petitioner "really wanted to resolve the case, and not come back to court." Trial counsel said that immediately after the plea, though, the Petitioner expressed some "hesitation" by saying something to the effect of "I shouldn't have done that." Trial counsel told the Petitioner that the Petitioner could withdraw his plea. The Petitioner never contacted trial counsel about withdrawing the plea, but trial counsel later learned the Petitioner had filed a pro se notice of appeal.

Trial counsel testified that the Petitioner was "very knowledgeable" and could read and write. Trial counsel had no doubts that the Petitioner knew what he was doing when he pled guilty. At the time of the plea, the TBI had not yet issued its chemical analysis report for the substance at issue. Trial counsel said that in that situation, he usually advised his client to wait for the report or to take the State's offer if the client knew the identity of the substance. Trial counsel said he did not remember having that conversation with the Petitioner. Trial counsel acknowledged that he and the Petitioner should have discussed the risks of pleading guilty without having the TBI's chemical analysis report and said that "in hindsight[,] I would have preferred to have had that talk with him."

On cross-examination, trial counsel testified that he would have filed a motion to suppress if he thought a suppression issue existed. The Petitioner seemed familiar with the criminal justice system, and trial counsel was not concerned about whether the substance was fentanyl.

The Petitioner testified that trial counsel was appointed to represent him after his July 2023 arrest and that trial counsel had represented him previously. Trial counsel and the Petitioner had a five-minute conversation at the Petitioner's arraignment, and trial counsel advised the Petitioner to waive a preliminary hearing. The Petitioner agreed and was returned to Bledsoe County.

The Petitioner testified briefly about the facts of his case and said Detective Roberts used his police car to block the Petitioner's car in the parking lot. The Petitioner showed his driver's license to Detective Roberts, but Detective Roberts did not include that information in the affidavit of complaint.

The Petitioner testified that trial counsel never provided discovery to him, so he wrote a letter to the trial court clerk and subsequently received his arrest warrant and the affidavit of complaint from the clerk. On January 9, 2023, the Petitioner was returned to McMinn County and met with trial counsel. The Petitioner and trial counsel reviewed the documents that the Petitioner had received from the trial court clerk, and the Petitioner told trial counsel that Detective Roberts did not have probable cause for the stop. Trial counsel told the Petitioner about the officer's body camera video and said he did not see a

- 5 -

suppression issue. Trial counsel also told the Petitioner about the State's three-year offer, and the Petitioner knew he would have to serve the sentence consecutively to his previous eight-year sentence. Trial counsel showed the Petitioner a letter that was on trial counsel's computer, and the Petitioner accepted trial counsel's advice and pled guilty. The Petitioner said trial counsel spent a total of fifteen minutes with him during trial counsel's entire representation on this case.

The Petitioner testified that he told the trial court at the plea hearing that he did not agree with the State's facts and that trial counsel "immediately pulled me to the side, and you know, he spoke for me basically. He convinced me that you know, just be [quiet] and take the plea. And that's what I did, but I didn't agree." The Petitioner said he still did not agree with the State's facts. The Petitioner received trial counsel's letter after he entered his guilty plea.

The Petitioner testified that he never received the TBI's chemical analysis report and that he and trial counsel never discussed the report. The Petitioner stated that if he had known the results of the TBI's analysis were pending at the time of his plea hearing, he would not have pled guilty because he did not know the substance was fentanyl. He said that the female who was in the car with him threw the substance onto his lap and that he was forced to put the substance into his pocket before Detective Roberts approached his car. First post-conviction counsel introduced the TBI's Official Forensic Chemistry Report into evidence at the post-conviction hearing. The report showed that the substance was a mixture of fentanyl and heroin.

On cross-examination, the Petitioner testified that he knew when he pled guilty that he could receive a harsher sentence if he went to trial and was convicted. He acknowledged that he was on parole when he committed the offense and that one of the rules of his probation certificate provided: "I agree to a search without a warrant of my person, vehicle, property, or place of residence by any probation or parole officer, or law enforcement officer, at any time without reasonable suspicion[.]" The Petitioner said that he signed the agreement but that he did not agree to being stopped without probable cause.

On redirect-examination, the Petitioner testified that he wrote trial counsel several letters, asking him about the suppression issue and the unlawful stop. Trial counsel told the Petitioner that the trial court would conclude the stop and search were reasonable and advised him to accept the State's plea offer. The Petitioner said that he did not know about the TBI's testing of the substance and that "I don't think that I would have [pled] guilty had I known that none of this stuff was available at the time."

On May 6, 2024, the post-conviction court entered an order denying relief. As to the Petitioner's claim that trial counsel provided ineffective assistance for failing to file a

motion to suppress based on the alleged unlawful stop by Detective Roberts and for advising the Petitioner to plead guilty when there was an alleged valid suppression issue, the post-conviction court concluded that the Petitioner failed to show trial counsel provided deficient performance because the Petitioner failed to provide any proof of the stop at the hearing. The post-conviction court noted that the Petitioner did not call Detective Roberts to testify to establish whether a motion to suppress would have been successful. The post-conviction court also found that trial counsel was not deficient because trial counsel's three-page letter showed that trial counsel thoroughly researched the issue and that trial counsel explained to the Petitioner why he thought the Petitioner should accept the State's plea offer.

The post-conviction court then addressed the Petitioner's claim that trial counsel was ineffective for resolving the case without receiving the TBI's chemical analysis report. The post-conviction court concluded that the Petitioner failed to show trial counsel was deficient because trial counsel said the Petitioner knew the identity of the substance and did not want to delay the case. The post-conviction court also concluded that the Petitioner failed to show prejudice because the TBI report identified the substance as fentanyl and heroin. The court determined that the report "validate[d]" the Petitioner's guilty plea to possession of fentanyl with intent to sell or deliver. The post-conviction court noted that heroin was a Schedule I controlled substance and that the Petitioner could have been charged with a more serious crime related to his possession of that drug. Accordingly, the post-conviction court denied the petition for post-conviction relief.

## ANALYSIS

On appeal, the Petitioner contends that trial counsel was ineffective for failing to file a motion to suppress the evidence obtained from his unlawful stop, for advising him to accept the State's plea offer when there was a meritorious suppression issue, and for advising him to accept the State's plea offer while the TBI's chemical analysis report was pending. The State argues that the post-conviction court did not err in denying the petition. We agree with the State.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. *Wiley v. State*, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of

witnesses or the weight of their testimony. *Phillips v. State*, 647 S.W.3d 389, 400 (Tenn. 2022) (citations omitted). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. *Phillips*, 647 S.W.3d at 400 (citing *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009)).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, *see Strickland*, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).

As to prejudice, in the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *House v. State*, 44 S.W.3d 508, 516 (Tenn. 2001). When a

petitioner raises an ineffective assistance of counsel claim based on trial counsel's failure to file a motion to suppress, the prejudice prong of the test is satisfied by showing a meritorious suppression claim and a reasonable probability that the outcome of the proceedings would have been different if the evidence at issue had been excluded. *Phillips v. State*, 647 S.W.3d 389, 403 (Tenn. 2022) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). Courts need not approach the *Strickland* test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; *see Goad*, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

Initially, the State argues that we should dismiss the appeal because the Petitioner's notice of appeal was untimely. In his reply brief, the Petitioner asserts that his notice of appeal was timely and, in the alternative, requests that we waive the timely filing requirement.

Tennessee Rule of Appellate Procedure 4(a) provides that the notice of appeal must be filed with the appellate court clerk within thirty days after the date of entry of the judgment appealed; however, the notice of appeal is not jurisdictional, and this court may waive the timely filing requirement in the interest of justice. Tenn. R. Crim. P. 4(a). The post-conviction court entered its order denying the post-conviction petition on May 6, 2024. Therefore, the Petitioner had until June 5, 2024, to file his notice of appeal. The Petitioner, while still represented by first post-conviction counsel, filed a pro se notice of appeal. According to the certificate of service, he delivered the notice to prison authorities for mailing on May 14, 2024. On June 17, 2024, the Petitioner filed a pro se motion to rehear his post-conviction petition, arguing that first post-conviction counsel was ineffective at the post-conviction evidentiary hearing because first post-conviction counsel failed to call Detective Roberts to testify and because first post-conviction counsel introduced into evidence the TBI chemical analysis report, which was prejudicial to the Petitioner's case. On July 10, 2024, the trial court clerk notified the Petitioner by letter that he should have filed his notice of appeal with the appellate court clerk and returned the original notice of appeal to him. The Petitioner then mailed the notice of appeal to the appellate court clerk, and the notice bears a file-stamp date of July 23, 2024. The Petitioner included a letter to the appellate court clerk with his notice of appeal. In the letter, the Petitioner stated that he mistakenly filed his original notice of appeal with the wrong court, stated that he was acting pro se, and requested to be appointed counsel because first post-conviction counsel was ineffective. On August 2, 2024, the post-conviction court denied the Petitioner's motion to rehear because the Petitioner filed the motion after the post-conviction court lost jurisdiction of his case.

The Petitioner asserts that his notice of appeal was timely pursuant to the "mailbox rule" because he delivered it to prison authorities for mailing just eight days after the post-conviction court denied the petition for post-conviction relief. *See* Tenn. R. Crim. P. 49(d)(1). However, the Petitioner sent the otherwise timely notice of appeal to the wrong court. As a result, the notice was filed almost seven weeks late.

The Petitioner has requested that we waive the timely filing requirement in the interest of justice. It is the petitioner's burden to demonstrate that we should waive timely filing of the notice of appeal *See State v. Manning*, No. E2022-01715-CCA-R3-CD, 2023 WL 7439203, at *2 (Tenn. Crim. App. Nov. 9, 2023) (citing *State v. Thomas*, No. W2022-00109-CCA-R3-CD, 2023 WL 328337, at *3 (Tenn. Crim. App. Jan. 20, 2023), *perm. app. denied* (Tenn. June 7, 2023)), *perm. app. denied* (Tenn. May 16, 2024). As this court has explained:

> When considering whether to waive an untimely notice of appeal, "this court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case." *State v. Rockwell*, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007). Other relevant factors include the failure to acknowledge an untimely appeal and to seek waiver of the filing requirement. *See State v. Cooke*, No. M2019-01164-CCA-R3-CD, 2020 WL 3606451, at *2 (Tenn. Crim. App. July 2, 2020) (declining to waive untimely notice of appeal, in part, when the defendant failed to respond to the State's argument that the motion for new trial and notice of appeal were untimely)[, *no perm. app. filed*].

*State v. Kroese*, No. M2024-01166-CCA-R3-CD, 2025 WL 1091841, at *2 (Tenn. Crim. App. Apr. 9, 2025), *no perm. app. filed*.

The Petitioner asserts in his reply brief that the interest of justice warrants waiver of his untimely pro se notice of appeal because he was effectively abandoned by first post-conviction counsel. We note that first post-conviction counsel did not withdraw from representation or file a notice of appeal after the post-conviction court's denial of the petition but that "there is no constitutional right to effective assistance of counsel in post-conviction proceedings." *House v. State*, 911 S.W.2d 705, 712 (Tenn. 1995) (citing *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)). On March 17, 2025, this court entered an order, directing first post-conviction counsel to file a motion to withdraw in this court. On March 21, 2025, first post-conviction counsel filed the motion and attached an affidavit in which he stated that after the post-conviction court entered its order denying post-conviction relief, the Petitioner filed several complaints against him with the Board of Professional Responsibility. First post-conviction counsel further stated that he had to

answer each of the Petitioner's "empty complaints" and that their attorney-client relationship was irretrievably broken and could not be repaired. On March 28, 2025, this court granted post-conviction counsel's motion to withdraw and remanded the case to the post-conviction court for the appointment of new post-conviction counsel. Because the Petitioner addressed the timeliness of his notice of appeal in his reply brief; requested that we waive the timeliness filing in the interest of justice; and provided a reason for his untimely pro se notice of appeal, which is supported by the record, we will waive the timely filing in the interest of justice.

Regarding the Petitioner's claim that trial counsel was ineffective for failing to file a motion to suppress evidence obtained from his unlawful stop and his related claim that trial counsel was ineffective for advising him to accept the State's plea offer when there was a meritorious suppression issue, the record does not preponderate against the post-conviction court's findings and conclusion that the Petitioner failed to show prejudice. The only evidence about the stop at the post-conviction evidentiary hearing was the Petitioner's own testimony. The Petitioner did not call Detective Roberts to testify about the stop or introduce the officer's body camera video into evidence. The Petitioner also did not call Detective Roberts to testify as to what the officer knew about the Petitioner's status as a parolee. In any event, the stipulated facts presented during the plea colloquy indicated that the officer was aware of the Petitioner's status as a parolee and announced that he was conducting a Rule 8 search. Therefore, the Petitioner has failed to show that a motion to suppress would have been successful and, consequently, has failed to show prejudice.

As to the Petitioner's claim that trial counsel was ineffective for advising him to plead guilty while the TBI's chemical analysis was pending, the post-conviction court concluded that the Petitioner failed to show deficient performance or prejudice. In addressing this issue, the post-conviction court found that trial counsel testified that the Petitioner knew the identity of the substance. However, the record preponderates against that finding. Trial counsel testified that when a client received a plea offer before the TBI issued its chemical analysis report, he usually advised the client to wait for the report or go ahead and plead guilty if the client knew the identity of the substance. Trial counsel said that he did not remember discussing the risks of pleading guilty without the TBI report with the Petitioner and that he should have done so. Trial counsel did not say the Petitioner knew the identity of the substance. Nevertheless, first post-conviction counsel introduced the TBI's chemical analysis report into evidence, and the report shows that the substance was a mixture of fentanyl and heroin. Therefore, the record supports the post-conviction court's conclusion that the Petitioner failed to demonstrate he was prejudiced by trial counsel's advice to plead guilty to possession of fentanyl with intent to sell or deliver without first obtaining the report.

- 11 -

## CONCLUSION

Upon our review, we affirm the post-conviction court's denial of the petition.

s/ John W. Campbell
JOHN W. CAMPBELL, SR., JUDGE